*(Mario Co.)*
*Johnson Decoir Association,*

# DUXIANA LICENSE AND
# MARKETING AGREEMENT

As of _____

To the Duxiana Shop Owner(s)
Identified in Addendum No. 1:

Re:  Duxiana License and Marketing
     Agreement Relating to Duxiana Shop
     to be Operated by you at the Site
     Specified in Addendum No. 1

Dear Sirs:

Dux Interiors, Inc. ("the Company"), together with its
parent companies in Sweden and Denmark, has originated
and developed a plan or system – called the "Duxiana
Concept" – for the promotion and sale of "Dux" beds and
mattresses and other "Dux" and "Duxiana" bedding products
through a chain of independent retail stores or depart-
ments within stores ("Duxiana Shops") which will be
licensed to use the Duxiana name and to sell Dux
products, and have common design and decor, utilize
common promotional techniques, materials, and programs,
offer substantially the same products and operate in
accordance with standardized methods and procedures.

You have indicated a desire and willingness to open and
operate a Duxiana Shop at the site referred to above and
we have agreed to authorize and license you (sometimes
referred to herein as the "Shop Owner" or the "Licensee")
to do so on the terms and conditions set forth herein.

This letter, together with the Addenda hereto, sets forth
our agreement with you in this respect. This Agreement
will become effective and binding upon the Company and
upon you on the Effective Date as hereinafter defined,
provided, however, that in the event that the construc-
tion, equiping, decorating and furnishing of your Shop
shall not have been completed, and the Shop is not open
for business, prior to the date specified in the last

L&M 5890

sentence of Section 6.1 (or such later date as the Company may have agreed to in writing), this Agreement shall lapse and you and we shall have no further obligations hereunder except obligations (including your payment obligations) with respect to items which you have purchased or agreed to purchase from the Company pursuant to section 5.2 and Addendum No. 2 and the Exhibits thereto.

1. <u>Defined Terms</u>

The following terms, whenever used in this agreement or in the Addenda hereto, shall, unless the context otherwise requires, have the respective meanings set forth below:

1.1 "Duxiana Shop" (or "Shop") shall mean your retail store, or in the case of a retail store which offers or sells more than beds and bedding products, the segregated department within your store which is designed for the sale of Duxiana Products and Related Products pursuant to the Duxiana Concept.

1.2 "Duxiana Products" shall mean any and all products sold by the Company to you for resale by you pursuant to the Duxiana Concept.

1.3 "Duxiana Concept" shall have the meaning set forth in the first paragraph of this letter.

1.4 "Duxiana Shop Premises" or "Premises" shall mean the premises where you shall conduct business in accordance with this Agreement, which premises are described more particularly in Addendum No. 1 hereto, or the premises where you propose to conduct such business as described in Section 2.4.

1.5 "Duxiana Shop Training Representative" and "Duxiana Shop Design Consultant" shall mean the persons referred to in sections 4.1 and 6.1, respectively. Such persons are identified in Addendum No. 1.

1.6 "Effective Date" of this agreement means the date of this letter unless a different date is identified as the Effective Date on Addendum 1.

1.7 "Gross Sales of the Shop" shall mean all

sales, whether retail or wholesale, aris-
ing out of the operation of the Duxiana
Shop, reduced by bona fide refunds and
credits for returned merchandise. Sales
and use taxes shall be excluded from the
computation of Gross Sales.

1.8 "Manual" shall mean any confidential
manual or memorandum or other written
materials describing the methods and pro-
cedures to be followed in operating a
Duxiana store or department.

1.9 "Related Products" shall mean products
other than Duxiana Products which may from
time to time be approved by the Company
for sale in your Shop pursuant to the
Duxiana Concept.

1.10 "Right of First Refusal" shall mean your right
to have offered to you the opportunity to open
an additional Duxiana Shop or Shops within the
Right of First Refusal Area upon the terms and
conditions set forth in section 2.1.

1.11 "Shop Manager" shall mean the individual with
management responsibility for your Duxiana
shop.

1.12 The "term of this Agreement" shall include any
Renewal Period during which this Agreement
continues in effect.

1.13 "Trademarks" shall mean the registered
trademarks "Duxiana" and "Dux" and any
other Trademarks, trade names and service
marks - whether registered or not - used
by the Company in connection with the
Duxiana Concept.

2. Authorization and License to Use the Duxiana
Concept and Trademark and to Operate your
Duxiana Shop as an Independent Contractor;
Exclusive Area and Right of First Refusal

2.1 The Company hereby authorizes you to open and
operate a Duxiana Shop at the Site described in
Addendum No. 1, upon the terms and conditions
set forth herein, and grants to you a license
to use in connection therewith the Duxiana
Concept, including the Duxiana trademark, but
only to identify, and in connection with the
operation of, your Duxiana Shop.

The Company agrees that (i) during the term of this Agreement it will not license or authorize any person or entity (other than you) to employ or use the Duxiana Concept or operate a Duxiana Shop at any location within the Immediate Marketing Area described in Addendum No. 1; and (ii) during the Initial Exclusive Area Term described in Addendum No. 1, it will not license or authorize any person or entity (other than you) to employ or use the Duxiana Concept at any location within the geographic area described in Addendum No. 1 as the Initial Exclusive Area.  The foregoing shall not be construed to prohibit sales by the Company or by other Duxiana Shops to purchasers within either such Area.  (Similarly, you will not be prohibited from selling to purchasers residing or located outside such Areas.)

The Company further agrees that during the period described as the Right of First Refusal Term in Addendum No. 1, it will not, within the "Right of First Refusal Area" specified there-in, authorize any person or entity (other than you) to open or operate a Duxiana Shop, or to use the Duxiana Concept in connection with the sale of Duxiana Products, unless, prior to the authorization of such person, it shall have first offered to you the opportunity to open a Shop at the proposed location upon terms and conditions no less favorable to you than the terms and conditions upon which it proposes to grant a license to any other person to operate a Duxiana Shop at the proposed location. The Right of First Refusal accorded you under the preceding paragraph shall be subject to the following:

(a)  From the date on which you receive from the Company notice in writing of the proposed location of an additional Duxiana Shop within the Right of First Refusal Area and the terms and conditions upon which it proposes to grant a license to operate such shop, you shall have 90 days to determine whether you will elect to open a Duxiana Shop at the proposed location on the terms and conditions set forth by the Company and to enter into a license and marketing agreement with the Company obligating you to open such Shop at that location on such terms and condi-

tions. In the event that prior to the end of such 90-day period you have not entered into a written agreement to open the proposed shop on the terms and conditions set forth by the Company, your right to open such shop shall terminate at the end of such period and the Company may thereafter license any other person to open and operate such shop on terms and conditions no more favorable to the proposed licensee than the terms and conditions described by the Company to you.

(b)  In the event that (i) the Company has offered you the opportunity to open a Duxiana Shop at a location within the Right of First Refusal Area and you have elected not to open such Shop within the time period described in paragraph (a), and (ii) the Company thereafter enters into a License and Marketing Agreement with another person or entity to open and operate such Shop on terms and conditions no more favorable to such licensee than those offered to you, your rights under the preceding paragraph shall terminate and the Company shall be free to license or authorize any person to use the Duxiana Concept and operate a Duxiana Shop at any location within the Right of First Refusal Area except that during the term of this Agreement the Company will not so license or authorize anyone within the Immediate Marketing Area, and during the Initial Exclusive Area Term, the Company shall not so license or authorize anyone within the Initial Exclusive Area.

(c)  Your Right of First Refusal under the preceding paragraph shall not be assignable except to an assignee as part of an assignment which has received the prior written consent of the Company pursuant to Section 14.

(d)  Anything herein to the contrary notwithstanding, the obligations of the Company set forth in this Section 2.1 shall be binding upon the Company only so long as this Agreement remains in effect. If this Agreement shall terminate for any reason, such obligations shall no longer be binding upon the Company.

2.2    No partnership, joint venture, agency, or
employment is intended or created by this
Agreement.  You shall act as an inde-
pendent contractor in relation to the
Company and your customers and you are not
authorized to enter into any binding
agreements on behalf of the Company or
otherwise to assume any commitments or
undertakings to anyone on the Company's
behalf.

2.3    Except as provided in sections 3.5 and
10.2 hereof, you agree to indemnify and
save the Company harmless from and against
all claims, demands, costs, and expenses
arising out of the operation of the
Duxiana Shop or in respect of the Duxiana
Shop Premises.  You further agree to main-
tain in effect during the term of this
Agreement insurance coverage of the type
and in the minimum amounts set forth in
Addendum No. 1.  Each such contract of
insurance shall contain agreements by the
insurer that the contract will not be can-
celled except upon at least 30 days prior
notice to each of the insureds, that the
act or omission of one insured will not
invalidate the contract or its coverage as
to any other insured, and that the insurer
will furnish to the Company as well as to
the Shop Owner, certificates of the insur-
ance coverage as in effect from time to
time during the term of this Agreement.

2.4    If the precise location of the Duxiana Shop
Premises has not been determined, or if such
location ("the Site") has been determined but
you have not yet acquired or entered into a
lease thereof, the obligations of the Company
under this Agreement, including section 2.1
hereof, are subject to the condition that you
shall have purchased the Site, or shall have
entered into a lease of the Site on terms and
conditions satisfactory to the Company (which
the Company shall have so indicated in writ-
ing), within 30 days of the date of this agree-
ment.  Upon your execution of such lease, pro-
vided it shall have been approved as satisfac-
tory by the Company, and furnishing a copy
thereof to the Company, this Agreement shall
become effective.  The Site, or portion thereof
which the Company has approved for the proposed

Duxiana Shop, shall be deemed the "Duxiana Shop Premises".

3.    Trademarks and Duxiana Concept

3.1    You recognize the Company's ownership of and exclusive right to use and to grant to others the right to use the Trademarks Duxiana and Dux and you hereby acknowledge and agree that you have no claim and will hereafter not assert any claim to ownership of such Trademarks or any registration thereof in any jurisdiction, or to any goodwill associated therewith, by reason of your licensed use of the Trademarks.  As between ourselves you agree that you do not and will not, during or after the term of this agreement, dispute the validity of the Trademarks, any registration thereof or the rights of the Company and its licensees thereto.  You agree that during the term of this Agreement and after its termination or expiration irrespective of the reason therefor, you will not use or imitate any of the Trademarks or the Duxiana Concept or any of their distinguishing characteristics except by virtue of the authorization and license granted pursuant to section 2.1 above. You further agree that you shall make use of the Duxiana Concept and the Duxiana Trademark only in accordance with the standards specified herein, and that you shall use the Trademark "Dux" only to refer to and identify products so marked which are sold in your Shop, or to the companies involved in the manufacture or distribution of such products, and in no other way whatever.

3.2    You have advised us that you intend to file with the appropriate authorities a fictitious name statement, application or certificate for use of the trade name described in Addendum No. 1 as the "Proposed Shop Name", and that you propose to operate your Shop and conduct the business of the Shop under that name. The Company hereby consents to and authorizes your use of such name, provided, however, (i) that except as otherwise expressly permitted by the Company, the word "Duxiana" in such name shall be used only

L&M 5890

with the standard registration mark described in Section 3.3, and (ii) that the Company reserves the right to require you at any time to discontinue use of such name or of any name incorporating or utilizing the Duxiana or Dux name; you agree that upon receipt of written notice from the Company to such effect you will, as promptly as feasible and in any event within thirty days, discontinue your use of such name and take steps to withdraw or terminate the effectiveness of the said fictitious name statement or certificate or authorization. Except as explicitly authorized by this paragraph, you may not use the Trademarks (or any characteristic part thereof) in your company name or as part of your trade name, or in such a way as to cause the Trademarks to become associated with products or services not manufactured or authorized by the Company, or in such a way as to lead any third party or governmental authority to assume that the Trademarks constitute all or part of any company name.

Unless you shall have received our prior written consent, you will not display or use at the Duxiana Shop Premises any trademark, service mark or other marks or advertisements of any other person, firm or corporation.

3.3    Any and all documents or other printed or written materials on which you intend to apply the Trademarks, including stationery, brochures, invoices, etc., shall be approved by the Company in writing prior to use thereof.

On any and all such written materials, as well as on all signs identifying your Shop and in any advertising or other printed materials prepared by you or or printed materials used in the operation of your Shop, the Trademarks "Dux" and "Duxiana", and any other Trademarks which the Company may hereafter advise you that it has registered, shall be used only with the standard registration mark (an encircled R) adjacent thereto.

3.4    The Trademarks shall remain the property of the Company. You will not have any right to use the Trademarks other than as provided by this Agreement.

L&M 5890

- 8 -

3.5   In the event that you receive notice or know-
ledge or are informed of any claim asserted by
any third person that any of the Trademarks, or
the Company's or your use thereof, infringe any
trademarks or other right of any person, you
shall promptly notify the Company of such
claim.   Upon receipt of notice of any such
claim, the Company shall take such action as it
may deem reasonably necessary to defend against
such claim and, provided that such claim does
not arise out of or involve use of the
Trademarks by you in ways not authorized by
this Agreement, will assume the costs of such
defense and indemnify and hold you harmless
from and against any loss incurred by you by
reason of your use of the Trademarks.   The
Company shall have the sole authority to
settle, compromise or otherwise dispose of any
such claim.   You agree to cooperate fully with
the Company in the defense of any such claim.

3.6.  In the event that you become informed or aware
that any other person within the marketing area
of your Shop is using or utilizing the
Trademarks or any of them in connection with
the marketing or sale of any furniture or
bedding products or any other products for use
in the home, you agree to promptly notify the
Company of such use.

4.   <u>Training</u>

4.1   Prior to the public opening of your
Duxiana Shop and for a period of not less
than two weeks following such opening, the
Company will make available to you the
full time services of the Duxiana Shop
Training Representative or such represen-
tatives of the Company as may be mutually
agreed, to provide to your Shop Manager,
and to others to be employed in the opera-
tion of the Shop, such training as the
Company considers necessary that they
receive in order to operate the Shop.   You
agree to make your Shop Manager and other
Duxiana Shop employees available for all
such training and to the extent set forth
in Addendum No. 1, you further agree to
pay (or make appropriate reimbursement to
the personnel involved for) the travel and
living expenses incurred by the Training
Representative or other personnel provid-

L&M 5890

ing such special training plus the Fixed Compensation Charges for such Representative or personnel in the amounts specified in Addendum No. 1.

4.2   At the Company's sole option, the Company may also provide special training in the installation of Duxiana Products or in other facets of promotion of, merchandising, or administration of, the Duxiana Concept.  You agree to make your Manager, together with other employees designated by you and the Company, available for all such special training and you further agree to pay to (or to make appropriate reimbursement to the personnel involved for) the travel expenses, living expenses and other fixed compensation charges incurred by the persons providing such special training.

4.3   Travel and other expenses and costs of your employees or prospective employees in attending any training described herein shall be solely your responsibility.

5.   Duxiana Products/Related Products/Initial and Subsequent Purchases of Duxiana Products

5.1   The Duxiana Concept is designed to promote the sale of products manufactured or offered for resale by Dux Interiors or its parent or affiliated companies and to maintain a high concentration or focus on Duxiana Products in each Duxiana Shop. Accordingly, you agree not to sell any products in your Duxiana Shop except Duxiana Products and Related Products which have been approved by the Company.

5.2   Prior to the opening of the Shop you will have purchased an initial inventory of Duxiana Products in quantities not less than as specified in Addendum No. 2 and Exhibit A thereto.  You agree that the Company shall have a security interest in the inventory items so purchased for payment of the full purchase price therefor and any other amounts for which you may be obligated to the Company.

You agree that unless otherwise authorized or prescribed by the Company, all Duxiana Products offered or sold in your Duxiana Shop will be purchased from the Company.

L&M 5890

The prices, terms and conditions governing your initial purchase of Duxiana Products and your subsequent purchases of Duxiana Products shall be as set forth in Addendum No. 2 and Exhibit B thereto.  You hereby confirm your agreement to such terms and conditions and your agreement to promptly execute and furnish to the Company such financing statements and other instruments as may reasonably be required to evidence and perfect its security interest in all such items.

Without limiting the foregoing, you agree that this agreement shall constitute a Security Agreement between us and that pursuant hereto the Company has and shall have a secured interest in all of your property described in the form of Financing Statement attached as Exhibit C to Addendum No. 2, whether acquired by you per your Initial Purchases or per subse-quent purchase or purchases from the Company or otherwise, and in any proceeds therefrom (such property and proceeds be-ing hereafter referred to as the "Collateral") and that in furtherance of such security interest the Company is hereby authorized and empowered as follows:

(a)    to sign on your behalf and as your attorney-in-fact a Financing Statement or Statements with respect to the Collateral, and to file the said Financing Statement or State-ments with the appropriate state filing officer or officers;

(b)    to exercise, in the event of any default by you in making payment when due of any amount owing to the Company, any and all rights which a secured party has, or may by agreement have, under Article 9 of the Uniform Commer-cial Code, including without limitation all collection rights, rights to take posses-sion of, and rights to dispose of the Collateral which may be given to or conferred upon a

L&M 5890

secured party under such
Article.

Without limitation of the foregoing, in
the event of your default the Company
shall have all of the rights of a secured
party described in the form of security
agreement attached as Exhibit D to
Addendum No. 2.

6. The Duxiana Shop Premises:  Specifications,
Construction, Fixtures, Design, Equipment,
Maintenance

   6.1  The Company has provided to you, or will
        provide to you, general plans for the
        layout, design, color, decor and furnish-
        ings, and equipment applicable to Duxiana
        Shops of the type, size and configuration
        that you propose to open.  Further, if it
        has not already done so, the Company will
        provide you with specific plans and speci-
        fications for the specific Duxiana Shop
        you propose to open at the Duxiana Shop
        Premises and, if you request, with
        specific plans and specifications for all
        signs to be used in the Shop or in connec-
        tion with its operations.  The Company
        further agrees to furnish, at no cost to
        you, the on-site design consulting and
        construction/decor supervisory services of
        its Duxiana Shop Design Consultant.

        You agree, at your sole cost, to construct,
        equip, decorate and furnish the Duxiana Shop
        Premises in accordance with such plans and
        specifications, and to cause such construction,
        equipping, decorating and furnishing to be com-
        pleted, to the satisfaction of the Duxiana Shop
        Design Consultant, not later than the Shop
        Completion Date specified in Addendum No.1, or,
        if later, 90 days after your receipt of the
        specific plans and specifications for the
        Premises.

7. Obligations of the Company to Provide Pre-Opening,
Promotional and Operational Assistance

   7.1  Prior to the public opening, and during the
        planning and construction period, the Company
        will provide, at no cost to you, the plans,
        specifications and consulting and supervisory
        services described in section 6.1.

L&M 5890                          - 12 -

7.2   Prior to the public opening and immediately thereafter, the Company will provide the training program and personnel training services described in section 4.1.  To the extent set forth in Addendum No. 1, the cost of such program, including the travel, living and other expenses and charges as described in such Addendum, as well as the costs involved in making your Shop Manager and other employees available for such training, will be borne by you.

7.3   Prior to and in connection with the public opening, the Company will assist in preparing advertising, promotional and public relations programs to be conducted solely at your expense, except to the extent that expenses of local advertising of the opening of the Shop are included in determining amounts reimburseable by the Company under Sections 7.4, 8.1 and 8.2 and Addendum No. 3.

7.4   During the period commencing with the opening of the Shop and continuing as described in Addendum No. 3, the Company will pay or reimburse to you, as the Company's share of expenditures for local publication and dissemination of advertising of the Shop, the amounts specified in such Addendum, provided, however, that such amounts will be paid to you only on receipt of Advertising Contribution Requests describing the amounts expended and to be reimbursed in the form set forth in Exhibit A to Addendum No. 3, or other substantiations of such amounts satisfactory to the Company.

7.5   The Company will furnish you, either in the Manual or in other written form, a set of standard operating procedures to be followed in operating the Duxiana Shop.  The Company will also furnish to you, periodically, information pertaining to Duxiana Products and to the Duxiana Concept, recommended sales and sales incentive and improvement programs and techniques.  On a continuing basis, the Company will furnish advice concerning your inventory of Duxiana Products.

8.   Advertising/Promotion/Public Relations

8.1   Prior to and in connection with the public opening of your Duxiana Shop, you agree to

contract for the local publication and dissemi-
nation of advertisements prescribed by the
Company and you also agree to conduct, at your
sole expense, such additional promotional and
public relations activities, including the
opening reception or receptions, as the Company
may prescribe.  Amounts expended by you for
local advertising of the opening of the Shop
shall be considered to have been expended by
you pursuant to section 8.2 hereof; other
expenditures incurred prior to or in connection
with the opening of the Shop will not be con-
sidered to be incurred or expended pursuant to
section 8.2.

8.2    In the initial one-year period commencing with
the opening of the Shop and in each succeeding
one-year period thereafter, you agree that you
will expend on local publication and dissemina-
tion of advertisements or advertising material
or texts furnished by or otherwise approved by
the Company amounts not less than the amounts
set forth for each such one-year period in
Addendum No. 3.

With respect to each local advertisement run by
you, you agree to promptly furnish to the
Company an Advertising Response Report in the
form attached as Exhibit B to Addendum No. 3.

8.3    In order to control the way in which the Trade-
marks, including the registered "Duxiana" and
"Dux" trademarks, are used, and in order to
ensure the uniformity and quality of adver-
tising of Duxiana Products, the Company
requires that its "Duxiana" and "Dux" trade-
marks be used only in styles and formats
approved by the Company and, further, that it
have the opportunity to review, and approve in
advance, the content, form and method of dis-
semination or publication of any advertisement
or advertising or promotional materials
relating to Duxiana Products or Duxiana Shops.
You therefore agree that except for use of the
mark "Duxiana" as part of your trade name pur-
suant to section 3.2 hereof, you will use the
"Dux" and "Duxiana" trademarks in any such
advertisements or promotional materials only in
the styles and formats shown in Addendum No. 4
(and with the registration mark (encircled R)
adjacent thereto), and you further agree to
submit for prior Company approval the text and
proof of any proposed written advertising, or

the script or a video or audio recording of any television or radio advertising, before publishing or disseminating the same. You further agree not to use any promotional or advertising programs, materials or text which the Company has not approved.

8.4  You agree to arrange for the Trademarks designated by the Company to appear, in a style or format shown on Addendum No. 4 or otherwise expressly approved by the Company, on all paper or plastic bags, mailing and other packaging materials used by the Shop and you further agree to submit such articles for the Company's prior approval as to quality and style and as to the proper spelling and representation of Trademarks.

8.5  Subject to obtaining any necessary approvals or comments required by your lease of the Premises or by any local governmental or other authority, you agree to erect, display and maintain Shop and advertising signs of the size, design, color, number, location and illumination, and containing the Trademarks, as the Company may specify and to cause such signs to be prominently displayed at places within your Duxiana Shop previously approved by the Company. Such signs shall be maintained in first class appearance and condition, at your expense. You further agree not to use any signs or advertising in connection with your Duxiana Shop except signs or advertising specifically approved in advance by the Company.

Except to the extent otherwise required by law, you agree to operate the Duxiana Shop only under the name "Duxiana" or the trade name permitted by section 3.2 without any accompanying words or symbols of any nature (except the registration mark) unless approved in writing in advance by the Company.

9.  Operation of Duxiana Shop

9.1  You agree that the Shop will be open for business on the days and during the hours set forth on Addendum No. 1.

You agree that the Duxiana Shop shall have its own full-time Shop Manager whose efforts shall be devoted exclusively to the operations and

L&M 5890                                    - 15 -

business of the Shop.  Additionally, you agree to provide the Shop with services of one or more additional employees so that at all times when the Shop is open for business it will be staffed by persons whose sole responsibility at such times is to operate or assist in the operation of the Shop.  The Manager and all Shop employees shall be employed and compensated solely by you.

You further agree, at your sole cost and expense, to operate the Duxiana Shop in accordance with the Company's standards of quality, appearance, cleanliness, and service (including such standards as from time to time may be prescribed in the Manual) and to keep the Duxiana Shop stocked with inventory at not less than the minimum levels of both quantity and selections established by the Company for Duxiana Shops of comparable size, location and service markets.  You will at all times maintain the interior and exterior of the Duxiana Shop in sound, clean and attractive condition and shall do such redecoration, repairing and restoration as from time to time may be required to meet the Company's standards.

9.2   The Company or its representatives may from time to time inspect the Duxiana Shop, including any warehouse and other storage facilities maintained in connection therewith, without prior notice during regular business hours, to ensure compliance with the Company's standards of quality, appearance, cleanliness and service.  The Company shall notify you in writing of any deficiencies or failures to meet the Company's standards of quality, appearance, cleanliness and service and you shall have thirty (30) days following the receipt of such notice to correct all such deficiencies or failures.  Such notice by the Company shall constitute a notice of default under paragraph 15.2(a).

10.   Warranty on Mattress Springs.   Indemnification
      Against Warranty Liability

10.1  Each retail purchaser of a Dux mattress is entitled to the benefits of an express limited warranty of the Company on the mattress springs and spring system.  In this connection, with respect to each sale of a Dux mattress made by your shop, you agree (a) to furnish to the

purchaser the original copy of the Company's standard form warranty as in effect at the time of such sale, and (b) to register such warranty with the Company by promptly furnishing to the Company a duplicate counterpart of the warranty form furnished the customer, with all blanks completed to show the purchaser's name, address and telephone number, the date of purchase, the type and size of mattress purchased and the other information called for by the warranty form.

10.2   With respect to any claim made by any purchaser of a Dux mattress under a warranty that has been registered with the Company in the manner described in section 10.1, the Company agrees to indemnify and hold you harmless against any and all liability and expenses, provided, however, that you shall have given the Company written notice of such claim within 10 days after your receipt or discovery thereof.

11.  Reports

11.1   You agree to submit to the Company promptly all accounting and financial statements and other reports as may be reasonably required by the Company, including but not limited to:

(a)  A Weekly Sales Report, on a form provided by the Company, which will report the Shop's aggregate Mattress Sales, Other Sales and Total Sales for the preceding week, and Gross Sales of the Shop for the year to date. This report shall be mailed or otherwise submitted to the Company not later than the end of the first business day of the week following the week being reported upon.

(b)  Within 90 days of the end of your fiscal year, an income statement of the Shop for the preceding fiscal year, plus a copy of your balance sheet as of the end of such preceding fiscal year.

11.2   The Company may, at its expense, audit your financial books and records not more than once each year to ensure that the sales reports, income statements and balance sheets provided for in paragraph 11.1 are accurate.  In the event that any such audit reveals a discrepancy or error which evidences underpayment of fees to the Company of 15% or more of the total

L&M 5890

amount due during any one year, you shall pay the cost of conducting the audit, plus interest on any such deficiency at a rate not less than 10% per annum.

12. <u>Fees Payable to the Company</u>

In consideration of the license granted by the Company and the other agreements of the Company here-inbefore set forth, you agree to pay to the Company the license fees set forth in Addendum No. 5 hereto.

13. <u>Confidentiality</u>

In order to protect the value of the confidential information, the use of which is hereby licensed, you agree that you shall not disclose any information or knowledge concerning the Duxiana Concept to any person other than your employees.  You shall not copy or disclose to any person the Manual or other con-fidential information or their contents, and, during and after the term of this Agreement, shall not make use of the confidential information communicated to you by the Company, except to the extent necessary in the operation of your Duxiana Shop.  The Manual and other confidential information shall at all times remain the sole property of the Company and shall promptly be returned to it upon the termination of this Agreement.

To the extent permitted by law, you agree to require that each of your employees agree to be bound by the same confidentiality agreement as set forth above and you further agree to take steps to enforce such agreement when, as and if you are on notice of any violation thereof.

14. <u>Assignability</u>

You may not transfer or assign your rights under this Agreement without the prior written consent of the Company.

The Company's rights under this Agreement shall be freely assignable to any successor to the business of the Company or to any assignee, domestic or foreign, which controls, is controlled by, or under common control with, the Company or any successor to the business of the Company.

15. <u>Term/Right to Terminate</u>

15.1  This Agreement shall become effective as of the

M 5890

Effective Date and, unless terminated pursuant
to section 15.2 or 15.3 or section 21, shall
continue in force until the end of the Initial
Term set forth in Addendum No. 1.

At least six months prior to the end of the
Initial Term or of any Renewal Period, either
party may give notice to the other that it
elects to allow the Agreement to expire.  If
such notice shall have been given, the Agree-
ment will expire at the end of the said Term or
Period.

Unless the Agreement shall have been terminated
pursuant to section 15.2 or 15.3 or section 21
or shall expire in accordance with timely
notice given under the preceding sentence, the
Agreement shall automatically continue in
effect after the end of the Initial Term for a
period equal to the Renewal Period, and, after
the end of each successive Renewal Period, for
another period equal to the Renewal Period.

15.2   Without prejudice to any remedy either party
       may have for breach or nonperformance of this
       Agreement, either party may terminate this
       Agreement at any time during the Initial Term
       of this Agreement or any Renewal Period, upon
       the occurrence of any of the following events:

              (a)   if the other party shall be in
       default of any of its obligations here-
       under and shall have failed to correct or
       cure such default within thirty (30)
       calendar days after having received
       written notice of such default;

              (b)   failure of the other party to
       make any payment when due hereunder or for
       any products sold hereunder or under any
       contract of sale between the parties;

              (c)   any assignment or purported
       assignment made in violation of section
       14, or any sale or transfer of control of
       the Licensee (including but not limited to
       a sale or transfer of stock or equity
       ownership which effects or results in a
       change of control of the Licensee) which
       has not received the prior approval of the
       Company;

              (d)   the bankruptcy or insolvency of

the other party hereto, or any assignment or composition by the other party for the benefit of creditors;

provided, however, that if the Company is the terminating party, it shall have given you at least 60 days written notice of the reasons for termination of the agreement as described above.

15.3  The Company may immediately terminate this agreement if you for any reason, at any time during the Initial Term or any Renewal Period, vacate the Premises or cease to maintain a Duxiana Shop at the Premises.

## 16.  Effects of Termination

Upon the expiration or termination of this Agreement for any cause, you shall immediately discontinue the use of the name Duxiana and of all other Trade Marks, signs, emblems, and forms of advertising indicative of the Duxiana Concept, and, if requested by the Company to do so, shall make or cause to be made such removals of or changes in signs, buildings, and structures as the Company shall reasonably request so as to eliminate all references to the name Duxiana from the Duxiana Shop Premises. Upon such expiration or termination, you shall, at the option of the Company, and at your sole expense, free of charge to the Company, deliver to the Company or dispose of all or any part of the paper products and other marketing and similar articles bearing the name Duxiana or other Trademarks.

## 17.  Notices

Notices under this Agreement shall be sent by registered mail, postage prepaid, or by telex or telefax with confirming letter sent as aforesaid, and shall be regarded as properly given in case of by letter seven (7) days after the registered mailing date, or in case of telex or telefax and confirming letter when the telex or telefax is received. Any notice shall be deemed to be properly addressed if addressed as set forth in Addendum No. 1.

## 18.  Interpretation

18.1  No failure of the Company to exercise any power given to it hereunder or to insist on strict compliance with any obligation or condition hereunder, and no custom or practice of the

parties at variance with the terms hereof, shall constitute a waiver of the Company's right to demand strict compliance with the terms hereof. Waiver by the Company of any particular default shall not impair the Company's rights in respect to any subsequent default of the same or of a different nature, nor shall any delay or omission by the Company to exercise any rights arising from a default impair the Company's rights as to said default or any subsequent default.

18.2 With respect to the subject matter of this Agreement, no representations, inducements, promises, or agreements which are not embodied herein (or hereafter made in written form duly executed by the party to be responsible there-for) shall be of any force or effect.

18.3 This Agreement shall be binding upon each of the parties hereto and their respective heirs, executors, administrators, successors, and assigns, but this sentence shall not be deemed to authorize assignment or transfer of your rights under this Agreement, except in accor-dance with the provisions of section 14.

## 19. Governing Law

This Agreement shall be governed by and construed and interpreted in accordance with the laws of the state in which your Duxiana Shop Premises are located (or the Site thereof referred to in section 2.4 hereof).

## 20. Severability

If any provision of this Agreement, or its applica-tion to any person or circumstance, is invalid or unenforceable, then the remainder of the Agreement or the application of such provision to other persons or circumstance shall not be affected thereby, provided, however, that if any provision or application thereof is invalid or unenforceable, then a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of the invalid or unenforceable provision.

## 21. Information Furnished to the Company

21.1 You acknowledge that the Company has been in-duced to grant this license and enter into this marketing agreement by certain information

M 5890

- 21 -

(including, but not limited to, financial statements and biographical data) heretofore submitted by you to the Company, which informa- tion the Company has relied on in entering into this Agreement. In the event that such infor- mation contained any material misstatements, errors, or omissions of material facts, the Company shall have the right to terminate this Agreement (and, at the Company's sole option, any and all other agreements with you), effec- tive immediately upon written notice to you.

21.2    In entering into this License and Marketing Agreement, the Company is also relying upon your representation that your execution of this agreement and performance of your obligations hereunder will not constitute a violation or breach, or cause you to be in violation or breach, of any lease or contractual obligation that you have to any other person. You hereby confirm your representation and warranty to this effect.

22.    <u>Addenda and Exhibits</u>

The Addenda to this Agreement and the Exhibits to such Addenda are as follows:

Addendum No. 1 ("Specifics Addendum")

Addendum No. 2 ("Initial and Subse-
        quent Purchases Addendum")
    Exhibit A to Addendum No. 2 (Initial
        Order Forms, Invoice or other
        listing of Duxiana Products in
        Initial Purchase)
    Exhibit B to Addendum No. 2 (Dux
        Acknowledgment)
    Exhibit C to Addendum No. 2 (Form
        of Financing Statement Containing
        Description of Collateral)

    Exhibit D to Addendum No. 2 (Form
        of Security Agreement, plain
        English format)

Addendum No. 3 ("Advertising Addendum")
    Exhibit A to Addendum No. 3
        ("Advertising Contribution Request")
    Exhibit B to Addendum No. 3
        ("Advertising Response Report")

L&M  5890

Addendum No. 4 ("Dux" and "Duxiana"
Trademarks:  Approval, Style and Format)

Addendum No. 5 ("Fee Addendum")

The provisions of each of the above listed exhibits
and addenda are part of this agreement.

23. <u>Entire Agreement</u>

This agreement, together with the Addenda and
Exhibits referred to in section 22, constitutes the
entire agreement between us relating to your proposed
Duxiana Shop at the Premises as defined herein and
supersedes all prior agreements, commitments and
understandings, oral as well as written, between the
two of us.

Please indicate your acceptance of this Agreement by
signing each duplicate counterpart of this letter in the
space provided and returning all but one of such signed
counterparts to us.

Sincerely yours,

*See cover letter of March 1st. referring to Section 3.2, 5.2, and Section 14.*

DUX INTERIORS, INC.

By: *[signature]*
Date: *March 8, 1991*

For and on behalf of the
Shop Owner/Licensee:

*Johnson Design Associates, Inc.*

*Shawn Johnson, Pres.*
Date: *March 8, 1991*

ATTEST OR WITNESSED:

_____

Addendum No. 1 ("Specifics Addendum")
to Duxiana License and Marketing Agree-
ment with _____

_____

| Reference/Subject | Specifics |
|---|---|
| Duxiana Shop Owner (Licensee): | *Johnson Design Associates, Inc.* |
| Proposed Shop Name: | *Duxiana, Marin* |
| Section 1.4: "Site" (some-times referred to as "Duxiana Shop Premises" | *901 A Street - Unit A San Rafael, California* |
| Section 1.5: "Duxiana Shop Training Representa-tive" | J. Garvan Kelly |
| Section 1.5: "Duxiana Shop Design Consultant" | Arthur Porras 1736 West Montecito Way San Diego, California 92103 |
| Section 1.6: "Effective Date" | As of ~~August 1, 1990~~ *March 8, 1991* |
| Section 1.7: "Gross Sales of the Shop" (Clarification) | Sales outside the ordinary course of business (including non-inventory sales of items not constituting Duxiana Products or Related Products) shall not be considered to arise out of the operation of the Shop and shall be excluded from "Gross Sales of the Shop". |
| Section 2.1: "Immediate Marketing Area" | All of Marin County and all of Sonoma County. |
| Section 2.1: "Initial Exclusive Area" and "Initial Exclusive Area Term" | All of Napa County and all of Mendocino County (the "Initial Exclusive Area") for a two-year period (the "Initial Exclusive Area Term") commencing on the Effective Date. |
| Section 2.1: "Right of First Refusal Area" and "Right of First Refusal Term" | All of Napa County and all of Mendocino County (the "Right of First Refusal Area") for a three year period (the "Right of First Refusal Term") com-mencing on the day following the termination of the Initial Exclusive Area Term. |

ING AGREEMENT

Addendum No. 1 (Continued)
Page 2

**Section 2.3:** Insurance to be maintained in full force and effect by Shop Owner

Comprehensive public liability and property damage insurance with a minimum limit of liability of $1,000,000 for injury or death and damages to any one person, of $1,000,000 for injury or death arising out of any one occurrence, and $1,000,000 for damages to property, naming the Shop Owner and the Company as insureds.

Workers compensation and employers liability insurance as required under the law of the state in which the Shop Premises is located, naming the Shop Owner and the Company as insureds.

**Section 2.4:** Right to Relocate to a Replacement Side Within the Immediate Marketing Area

In the event that the lease of your Duxiana Shop Premises should terminate prior to the end of the term thereof for any reason other than (i) default by you thereunder or (ii) agreement between you and the lessee, you shall have 180 days from and after the termination of such lease to find a mutually agreeable replacement location within the Immediate Marketing Area (the "Replacement Site") and to open for business a Duxiana Shop at such Replacement Site. (If a Duxiana Shop is not opened within such 180-day period at a Replacement Site acceptable to the Company, this Agreement shall terminate.)

**Section 3.2:** Proposed Shop Name

See above.

**Section 3.2:** Conditions on Company's Right to Require Discontinuance of Use of Shop Name

Provided that your usage of the word "Duxiana" is limited to usage in your Shop Name and in ways permitted by Sections 8.1 through 8.5 of the Agreement and provided further that your Shop shall not have offered for sale in the ordinary course of business, either as principal or as agent, any items other than Duxiana Products or Related Products, the Company agrees that it will not exercise its right to require you to discontinue use of the trademark

Addendum No. 1 (Continued)
Page 3

"Duxiana" in your Shop Name except upon
termination of the License and Marketing
Agreement or upon the Company discon-
tinuing for any reason its use of the
"Duxiana" name in all of its operations
and by all of its other licensees or in
all of its operations and by all of its
other licensees within the State of
California.

Section 3.2 and 21.2:
   Representations by the
Company

The Company represents that it is the
sole and exclusive owner of the Duxiana
Concept, Trademarks and Manual and that
it has the sole and exclusive right to
sell, and to license others to sell,
Duxiana Products in the United States.
The Company further represents that its
execution of this agreement and per-
formance of its obligations hereunder
will not constitute a violation or
breach, or cause it to be in violation
or breach, of any contractual obligation
to any person.

Section 4.1 and 7.2:
   Training - Obligations
of the Company; Charges
and Expenses to be borne
by the Shop Owner

The Company will provide on-site train-
ing and assistance to the Shop Manager
both prior to the public opening of the
Shop and for a period following such
opening.  In view of the training
heretofore received by the Shop Manager
in other Duxiana Shops, it is contem-
plated that it may not be deemed neces-
sary for the Duxiana Shop Training
Representative (or other mutually agreed
upon representatives of the Company) to
provide the additional training services
for the full two-week-period following
the opening of the Shop as provided in
Section 4.1; such services will be
provided, however, to the extent deemed
necessary by the Shop Manager.  To the
extent such services are provided, the
Shop Owner shall bear the travel and
commuting expenses, plus reasonable
living expenses (hotel and meals) plus
expenses of local transportation,
incurred by or on behalf of the person
or persons providing such services, plus
Fixed Compensation Charges in the amount

Addendum No. 1 (Continued)
Page 4

of $1,250 per week with respect to on-site training services provided after the opening by the Shop Training Representative identified above and in amounts to be mutually agreed upon in the case of on-site training services provided by other personnel in the period following such opening.  Travel expenses to be charged to or borne by the Shop Owner with respect to training provided prior to the opening of the Shop and in the two-week-period following such opening will not include any charges for travel outside the State of California.

<u>Section 5.2</u>:  Initial Inventory

See Addendum No. 2.

<u>Section 5.2</u>:  Right of Shop Owner to Require Filing of Termination Statements; Right of Company to Require Financing Statements

At any time when there is no amount currently payable or owing to the Company or to become payable or owing within 90 days, for products ordered from or services provided by the Company, the Company will, upon written request of the Shop Owner, file a UCC Termination Statement to reflect the termination of its security interest in the Shop Owner's display items and inventory; in the event that the Shop Owner thereafter becomes indebted to the Company, however, either for items purchased from the Company or for any other reason, the Shop Owner in accordance with the provisions of Section 5.2, will on request execute any financing statements or other documents evidencing such security interest as the Company may reasonably request.

<u>Section 5.3</u>:  Terms and Conditions Relating to Initial Purchase of Duxiana Products

See Addendum No. 2

Addendum No. 1 (Continued)
Page 5


Section 5.3:  Terms and            See Addendum No. 2.
   Conditions Relating to
   Subsequent Purchases
   of Duxiana Products

Section 6.1:  Shop                 On or about November 1, 1990.
   Completion Date

Section 7.5:  Services to          The ongoing consultative and advisory
   be Performed at Company's       services described in Section 7.5
   Expense                         will be provided at no charge to the
                                   Shop Owner, and will include advice and
                                   consultation with respect to inventory
                                   levels and mix, display of Duxiana
                                   Products, service to customers, adver-
                                   tising provided by the Company or
                                   approved by it pursuant to Section 8.3
                                   or otherwise, other promotional ac-
                                   tivities approved by the Company, and
                                   purchasing.

Section 9.1:  Business Days        As mutually agreed.
   and Hours:

Section 9.1:  "Inventory"          The requirement that the Shop Owner
                                   maintain "inventory" at not less than
                                   the minimum levels established by the
                                   Company for Duxiana Shops of comparable
                                   size, location and service markets,
                                   shall apply only to display items
                                   necessary to maintain the appearance of
                                   the Shop in accordance with the
                                   Company's standards.

Section 10.1:  Warranty            A copy of the express limited warranty
                                   on Dux mattress springs and the Dux
                                   spring system is attached to this
                                   Addendum.  The Company reserves the
                                   right to modify the terms of such
                                   warranty at any time.

Section 11.1(b):  Shop's           If the Shop Owner's financial statements
   Income Statement and            have been examined by a Certified Public
   Balance Sheet                   Accountant or prepared by an independent
                                   accountant, copies of such statements as
                                   so certified or independently prepared
                                   must be furnished to the Company under
                                   Section 11.1(b).  However, in the event
                                   that the Shop Owner does not otherwise

Addendum No. 1 (Continued)
Page 6

|  |  |
|---|---|
|  | obtain certified financial statements or statements prepared by independent accountants, the Company will not require the same; in such case the Shop Owner may comply with Section 11.1(b) by furnishing financial statements internally prepared. |
| <u>Section 14.1</u>:Assignability | Section 14 shall not be deemed to prohibit a transfer of stock or other securities of or interest in the Licensee provided that such transfer is made to a member of the transferor's immediate family and does not involve a change or transfer of control of the Licensee. |
| <u>Section 15.1</u>: "Initial Term" | The period commencing on the Effective Date and continuing to the fifth anniversary of the formal opening of the Shop or, if earlier, the expiration of the lease of the premises. |
| <u>Section 15.1</u>:  Automatic Renewal of Agreement | Notwithstanding the second sentence Section 15.1, the Agreement shall not expire, and shall be continued in effect at the end of the Initial Term and each of the Renewal Terms, in each case for a period equal to the Renewal Period, unless (i) at the time notice is given pursuant to such sentence the party giving such notice has the right to terminate the Agreement under section 15.2 or 15.3 and (ii) the notice specifically  refers to the paragraph or subparagraph of the Agreement which authorizes the termination and to the facts or conditions which make such provision applicable. |
| <u>Section 15.1</u>: "Renewal Period" | The five-year period commencing on the day next following the end of the Initial Term or, thereafter, on the day following the end of the preceding Renewal Term. |
| <u>Section 15.2(b)</u> | The failure to make payment when due shall not be deemed to be an event |

Addendum No. 1 (Continued)
Page 7

giving rise to a right to terminate the Agreement if (a) such payment is made in full within ten days after receipt of notice that such payment is due, and if (b) within the preceding twelve month period there have been no more than two instances of failure to make payment when due (including but not limited to late payments made within ten days after notice).

**Section 15.3:** Limitation on Company's Right to Terminate Agreement by Reason of Vacancy of the Premises

In the case of a termination of your lease under circumstances described in Section 2.4 as amended by this Addendum (i.e., for a reason other than default by you thereunder or agreement between you and the lessor), the Company's right to terminate the Agreement is exerciseable only if, upon expiration of the 180-day period described therein, a Duxiana Shop shall not have been opened by the Shop Owner at a mutually acceptable Replacement Site.

**Section 16:** Effects of Termination

Upon the expiration or termination of this Agreement, the Company shall have the option to purchase items in your inventory at your cost; if all or any such items are not purchased by the Company, you may continue to sell the same for a period not in excess of six (6) months.

**Section 17:** Notices/ Addresses of Parties

Company/Licensor:     Dux Interiors, Incorporated
                      305 East 63rd Street
                      New York, New York 10021

Shop Owner/Licensee:

ATTACHMENT 1

ADDENDUM NO.

# LIMITED **15** YEAR
# WARRANTY

**C**ongratulations on your choice of mattress. All over the world the DUX mattress is renowned for quality and comfort. More than one thousand springs are designed to provide the right support - so that your body is really at rest while sleeping. The enchanting quality of a DUX mattress is a lifelong luxury that you enjoy forever.

**DUX** DUX has been producing matresses for more than 60 years. The springs are made of special high quality hardened steel. DUX gives the original purchaser of a DUX mattress a limited 15 year warranty for its spring system.

This warranty covers springs that might break under normal wear and tear. If such a defect appears during the first 5 years after purchase, we will, at our option, either repair or replace the mattress with no charge to you. If such a defect appears during the remaining 10 years of this limited warranty, we will, at our option, either repair or replace the mattress at a handling cost to you, or replace the mattress at a pro-rated charge to you. "The pro-rated charge will be based on the percentage of the original cost that corresponds to the portion of the 15 year period that you have owned the mattress."

This warranty gives you specific legal rights. You may also have other rights which vary from state to state.

*All warranty claims should be addressed to the Duxiana shop where purchased. Please fill out this form to register your warranty.*

Customer name _____

Address _____

Zip Code _____  Phone _____

Date of Purchase _____  DUX Model# _____  Size _____

Duxiana shop _____  Invoice _____

# DUXIANA
DESIGN FOR BEDROOM LOVERS

DUX Interiors, Inc., 305 East 63rd Street, New York, N.Y 10021

White - Customer          Canary - Shop          Pink - DUX Interiors, Inc.

Addendum No. 2 ("Initial and Subsequent Purchases Addendum") to Duxiana License and Marketing Agreement with _____

| Reference/Subject | Specifics |
|---|---|
| Section 5.2: Initial Purchases | Specific inventory items set forth in* copies of which are attached as Exhibit A to this Addendum No. 2. |
| Section 5.2: Prices, Terms and Conditions - Initial Purchases | The purchase price will be an amount equal to 50% of the published retail price of the items purchased. An amount equal to the shipping and handling costs will be billed at the time of shipment and payable upon presentation. The balance will be payable in three equal installments, due 120, 150 and 180 days respectively after your receipt of the items purchased; if either of the first two of these installments is not paid when due, the full unpaid balance will become immediately due and payable. Other terms and conditions are as set forth on the form of order acknowledgment attached as Exhibit B to this Addendum No. 2.<br><br>Prices charged the Licensee for items sold hereunder will not exceed the prices charged by the Company to any other person for the same or identical items being purchased at the same time and in the same quantity and subject to identical terms and conditions. |
| Section 5.2: Prices and Conditions - Subsequent Purchases | In each case the price will be 50% of the published retail price of the items purchased. In the case of items shipped to you from a Dux Interiors warehouse or installation within the United States, a shipping and handling fee equal to 6% of the purchase price is charged. Other terms and conditions are as set forth on Exhibit B to this Addendum No. 2. |

_____

*Unless purchase orders are entered and agreed upon at the time this agreement is signed, they will be incorporated by reference as per Exhibit A.



Except as otherwise provided in the
purchase order or order acknowledgment
or as otherwise agreed with respect to
any particular order or orders, the
Company agrees (1) that orders which
comply with the Company's payment and/or
deposit requirements will be filled as
promptly as existing warehouse stocks
permit, and (2) that in thew case of any
such orders which are "customer orders",
i.e.  orders placed with the Company for
shipment directly to customers of any
Duxiana Shop, will be processed in the
order in which they are received and
will be given priority over all other
orders except other customer orders
previously received and accepted.

Exhibit A to Addendum No. 2

THIS ADDENDUM SHALL CONSIST OF
THE ORDER ACKNOWLEDGMENTS WITH
RESPECT TO THE SHOP OWNER'S
INITIAL PURCHASES.

EXHIBIT B TO ADDENDUM NO. 2

# ACKNOWLEDGEMENT

**DUX**

| PAGE | ORDER NUMBER | CUST. CODE |
|------|--------------|------------|

☐ HOLD FOR BACK ORDER          SHIPPING SCHEDULE

**SOLD TO**                      **SHIP TO**

| DATE ORDERED | PURCHASE ORDER NO | DATE REQUESTED | SHIP VIA | F.O.B. |
|--------------|-------------------|----------------|----------|--------|

| LE NUMBER | TERMS | FREIGHT COLLECT | SALES | TERR. | STATE |
|-----------|-------|-----------------|-------|-------|-------|

| ITEM CODE | DESCRIPTION | QUANTITY | | | TAX | UNIT PRICE | AMOUNT |
|-----------|-------------|----------|-----------|---------|-----|------------|--------|
| | | ORDERED | BACK ORD | SHIPPED | | | |

acknowledgment constitutes acceptance of your offer for the purchase of the above items at the price and on the terms and
ons set forth on the face and back hereof. If your offer was submitted subject to the same terms and conditions, our agreement
come binding upon receipt of this acknowledgment. In any event, this agreement will become binding upon your written confirmation
agreement with the price, terms and conditions stated herein or, if you have not objected thereto, ten days after your receipt
acknowledgment.
the consent of Dux Interiors, your order may be cancelled or modified at any time prior to manufacture of the purchased item,
however, to a cancellation fee of not less than 20% of the ...

**TOTAL ORDER** ▷

ORDER NUMBER ●

GENERAL INFORMATION, TERMS
AND CONDITIONS OF SALE

Except as expressly provided on the face hereof, the following terms and conditions apply to this order and contract:

### 1. PRICES/SHIPPING CHARGES/RISK OF LOSS

For items shipped from the Dux Interiors warehouse (for example, F.O.B. Clifton, NJ) or otherwise sold F.O.B. point of shipment in the United States, the contract price does not include shipping charges and the sole obligation of Dux Interiors is to tender delivery of the items to Buyer's carrier at point of shipment; in such case, the risk of loss or damage shall pass to Buyer at the point of shipment and Dux Interiors shall not be responsible for damage or loss sustained in transit.

For items sold F.O.B. at Buyer's place of business or warehouse or other destination point, the price quoted includes all shipping charges and costs of clearing customs, if any, and the risk of loss or damage shall remain with Dux Interiors until the items are tendered for delivery at destination, at which time the risk of loss or damage shall pass to Buyer.

Unless otherwise expressly provided, the contract price does not include any costs or charges of installation.

Note: Upon delivery or receipt of shipment, the Buyer should examine cartons carefully and note visible damages or shortages on the delivery receipt. Claims for loss or damage of items in transit must be presented to the carrier promptly and all packing materials must be retained until inspection has been made. Any claims against Dux Interiors for visible defects or for shortages or errors must be presented to Dux Interiors in writing within 10 days of receipt of shipment. Failure to make claim within such period shall be deemed a waiver of all claims for defects, shortages and errors ascertainable from inspection.

### 2. TERMS

For items shipped from the Dux Interiors warehouse or otherwise sold F.O.B. point of shipment within the United States, the purchase price is payable, unless otherwise expressly provided, as follows: (1) an amount equal to 50 percent of the purchase price is payable in advance, upon receipt of the purchase order, and the order will not be deemed accepted until such payment shall have been received; and (2) payment of the full purchase price is payable at the time the items are shipped or otherwise tendered for delivery to Buyer.

For items to be shipped to Buyer from Sweden or which are otherwise sold F.O.B. at Buyer's place of business or warehouse or other destination point, the purchase price is payable, unless otherwise expressly provided, as follows: (1) any required deposit or advance payment of the purchase price is payable at the time specified in the contract; and (2) the remaining balance of the purchase price is payable 30 days after presentation to Buyer of an invoice and bill of lading evidencing shipment of the items to Buyer.

### 3. SECURITY INTEREST OF DUX INTERIORS

In any case in which Buyer shall have received or taken delivery or possession of any items before Dux Interiors shall have received payment of the full purchase price therefor, Dux Interiors shall have a security interest in such items and in all proceeds and properties received by or payable to Buyer on the sale, resale or exchange thereof. Upon request, Buyer shall promptly execute and furnish to Dux Interiors such agreements or instruments evidencing this security interest as Dux Interiors may reasonably request; such instruments shall include, but not necessarily be limited to, UCC or similar financing statements in form satisfactory to meet applicable recording requirements.

### 4. DELINQUENT PAYMENTS

On delinquent payments, Dux Interiors shall be entitled to interest on the amount overdue at the rate of 1½% per month or, if such rate is not permissible under applicable law, at the highest interest rate permissible thereunder.

### 5. DELIVERY

Unless otherwise expressly provided, the time of delivery to shipper or carrier for the account of Buyer is an estimate only and Dux Interiors shall not be responsible for any delay or default in delivery. Unless otherwise provided, Dux Interiors has the right to make partial deliveries. In the case of partial delivery, the Buyer's obligations to make payment for such items as described in section 2 above shall be determined separately with respect to items as they are shipped and invoiced and it shall be no defense to a claim for payment of the purchase price for such products that other items covered by the contract may not have been shipped, delivered, or received.

If the Buyer cannot or does not accept delivery of items tendered for shipment or delivery under the contract, Dux Interiors reserves the right to transfer such items to storage. Transfer to storage and storage in such event will be at the Buyer's expense. Dux Interiors may consider such transfer as delivery for all purposes.

In no event shall Dux Interiors be liable for delay or failure of delivery if such failure or delay is due to strikes, differences with workmen, war, riot, fire, inability to comply with government regulations, acts of God, failure of sources of supply or delay in receipt thereof, or any other causes beyond the control of Dux Interiors.

### 6. WARRANTIES

Dux Interiors warrants that the items sold will be free from defects resulting from faults in construction, materials or workmanship when used properly and in accordance with the instructions and directions, provided, however, that the liability of Dux Interiors to Buyer under this warranty shall be limited to replacement or repairs, at its option, and this shall be the Buyer's sole remedy. In no event will Dux Interiors be liable for consequential or indirect damages, including but not limited to, loss of profit, loss of goodwill, cost of capital or costs incurred in connection with substitute sources of supply.

Buyer's remedies under this paragraph will be enforceable against Seller only if (a) Seller is notified of the claim hereunder within two weeks after receipt or discovery thereof by the Buyer and (b) not more than one year shall have elapsed between the passage of title to Buyer and the date of the notice to Seller described in (a).

### 7. EXPRESS WARRANTY ON DUX MATTRESSES

In addition to the warranty set forth above, the original purchaser from Buyer of each Dux mattress sold to Buyer hereunder is entitled to the benefits of a limited 15 year express warranty against breakage of or defects in the springs or spring system occasioned by normal wear and tear. The liability of Dux Interiors under the foregoing express warranty shall be limited to replacement or repairs, at its option.

No express warranties and no implied warranties, whether of merchantability or fitness for any particular use, or otherwise (except as to title), other than those expressly set forth in paragraphs 6 and 7 above which are made expressly in lieu of all other warranties, shall apply to products sold hereunder. No waiver, alteration or modification of paragraph 6 or 7 or of this paragraph shall be valid unless made in writing and signed by an executive officer of Dux Interiors.

STATE OF CALIFORNIA

JULIUS BLUMBERG, INC., N.Y.C. 10013 (1-66)

UNIFORM COMMERCIAL CODE—FINANCING STATEMENT—FORM UCC-1 (REV. 1/76)

IMPORTANT—Read instructions on back before filling out form

This FINANCING STATEMENT is presented for filing pursuant to the California Uniform Commercial Code.

| DEBTOR (LAST NAME FIRST—IF AN INDIVIDUAL) | | 1A. SOCIAL SECURITY OR FEDERAL TAX NO. | |
|---|---|---|---|
| MAILING ADDRESS | 1C. CITY, STATE | | 1D. ZIP CODE |
| ADDITIONAL DEBTOR (IF ANY) (LAST NAME FIRST—IF AN INDIVIDUAL) | | 2A. SOCIAL SECURITY OR FEDERAL TAX NO. | |
| MAILING ADDRESS | 2C. CITY, STATE | | 2D. ZIP CODE |
| DEBTOR'S TRADE NAMES OR STYLES (IF ANY) | | 3A. FEDERAL TAX NUMBER | |
| SECURED PARTY<br>NAME<br>MAILING ADDRESS<br>CITY                STATE                ZIP CODE | | 4A. SOCIAL SECURITY NO., FEDERAL TAX NO. OR BANK TRANSIT AND A.B.A. NO. | |
| ASSIGNEE OF SECURED PARTY (IF ANY)<br>NAME<br>MAILING ADDRESS<br>CITY                STATE                ZIP CODE | | 5A. SOCIAL SECURITY NO., FEDERAL TAX NO. OR BANK TRANSIT AND A.B.A. NO. | |

This FINANCING STATEMENT covers the following types or items of property (include description of real property on which located and owner of record when required by instruction 4).

See Attached

7. CHECK ☒ IF APPLICABLE    7A. ☐ PRODUCTS OF COLLATERAL ARE ALSO COVERED

7B. DEBTOR(S) SIGNATURE NOT REQUIRED IN ACCORDANCE WITH INSTRUCTION 5(a) ITEM:  ☐ (1)  ☐ (2)  ☐ (3)  ☐ (4)

8. CHECK ☒ IF APPLICABLE    ☐ DEBTOR IS A "TRANSMITTING UTILITY" IN ACCORDANCE WITH UCC § 9105 (1)(n)

9. _____    DATE:

► _____

SIGNATURE(S) OF DEBTOR(S)

TYPE OR PRINT NAME(S) OF DEBTOR(S)

► _____

SIGNATURE(S) OF SECURED PARTY(IES)

TYPE OR PRINT NAME(S) OF SECURED PARTY(IES)

| CODE |
|---|
| 1 |
| 2 |
| 3 |
| 4 |
| 5 |
| 6 |
| 7 |
| 8 |
| 9 |

10. THIS SPACE FOR USE OF FILING OFFICER (DATE, TIME, FILE NUMBER AND FILING OFFICER)

To be completed after we have have of lien...

11. Return copy to:

NAME

ADDRESS

CITY

Attachment to Financing Statement, _____,
debtor, Dux Interiors, Inc., secured party. 

This Financing Statement covers the following types (or
items) of property:

    Mattresses, beds, headboards, bedframes, plinths,
    legs, sheets, duvets, pillows, pillowcases,
    bedspreads, comforters, and other bedding products
    (including parts or components of the foregoing)
    bearing the following marks, mames or labels: "Dux",
    "Duxello", "Duxiesta", "Duxiana", together with
    proceeds from the sale of any of the foregoing; and
    tables, chairs, sofas, recliners, bookcases, wall
    units and other furniture (including parts or
    components of any of the foregoing) bearing the
    following marks, names or labels: "Dux", "Avanti",
    together with proceeds from the sale of any of the
    foregoing.

L&M 5890

EXHIBIT D TO
ADDENDUM NO. 2

T 129—Security agreement, plain English format, 12-78

JULIUS BLUMBERG, INC.,
PUBLISHER, NYC 10013

# SECURITY AGREEMENT

This Agreement dated as of _____ 19___ is governed by the Uniform Commercial Code of the State of the Borrower's address, as shown below.

**Parties**

Borrower(s) and address(es)

Secured Party    Dux Interiors, Incorporated
Address          305 East 63rd Street
                 New York, New York 10021

In this Security Agreement, the words I, me, my and mine mean the Borrower. You and your mean the Secured Party.

**Security Interest**

I agree to give you a security interest in my property described below. If I don't repay any amounts I may owe you, or break a promise I've made in any note, loan or credit agreement I may have with you, you can take this property and sell or use it as described below.

By granting you a security interest in this collateral, I intend to provide you with security for payment and performance of all my obligations to you which now exist or may exist in the future.

**llateral**

Any of my property covered by your security interest is called "collateral." Any additions and replacements to the property, or any proceeds from the sale of the property are also part of the collateral. The collateral in this agreement is mattresses, beds, headboards, bedframes, plinths, legs, sheets, duvets, pillows, pillowcases, bedspreads, comforters, and other bedding products (including parts or components of the foregoing) bearing the following marks, names or labels: "Dux", "Duxello", "Duxiesta", "Duxiana"; and tables, chairs, sofas, recliners, bookcases, wall units, and other furniture (including parts or components of the foregoing) bearing the following marks, names or labels: "Dux", "Avanti", together with proceeds from any of the foregoing.

The collateral is used primarily for inventory (including retail display) purposes and is not used for personal, family or household purposes or in farming.

(xx xxxxxxx xxxx xx xxxxx xxxxx xxxx xxxxx xx xxxxx xxxxx xxx xxxxx xxx xxxx xxx xxxx xxx xxxx xxxx
xxxxxx xxxx xxxx xxxxxx xxxxxx)

xxx xxxxxx xxxx xxx xxxxxx xxxx xxx xxx xxxxxx xxxxx xxx xxxxxx xxxx xxx xxxxxx

I agree to help you do all that's necessary to protect your security interest in the collateral.

Your security interest secures my obligation to pay for the collateral and
xxxxx xxx xxxxxx xxxx xxx xxxxxx xxx xxx You will have what is called a "purchase money security interest" in the collateral. This will give you more protection against others who might claim the collateral is theirs.

                                              Except for sales in the
(except you, hereunder)                       normal course of business,

**Ownership of Collateral**

I own the collateral and no one else has any interest in it or claim against it/ I agree not to sell, lease, or give it as security to anyone else until I have repaid the loan in full.

**Use of the Collateral**

While any part of our loan is unpaid, I promise:

**Entire Balance Due**

I agree that without giving me any advance notice, you can require me to pay the unpaid balance of our loan at once if I break any promise made under this security agreement or under any note, loan, or credit agreement between us.

**Default and Repossession**

I will be in default:

1. If I don't make a payment when due or I don't fully repay any loan I may have with you.
2. If I break any promise I have made to you in this agreement, or under any note or loan or credit agreement between us.
3. If I become insolvent or file bankruptcy.
4. If a lien is put on the collateral, or if it's confiscated.
5. If the collateral is misused, or in danger of depreciating too much.
6. If I do anything that reduces my ability or willingness to repay.
7. If I die or become incompetent.
8. If my insurance is cancelled.

**Money Advanced**

If I failed to do anything I have promised to do in this agreement you may do it and any money spent for this purpose shall be added with interest to the loan secured hereby.

**Taking Possession of the Collateral**

If I am in default you can take possession of the collateral. I will deliver the collateral to you at a time and place you choose. If I don't, or if you wish, you can take possession of the collateral without giving me advance notice. If you take possession of the collateral you will not be responsible for any of my property left inside the collateral that is not covered by this agreement. You will try to return the property to me.

After you have taken possession of the collateral, you can sell it and apply the proceeds to the unpaid balance of our loan. You will give me ten days notice of any public sale or of the date after which you will be free to have a private sale. I will have to reimburse your expenses for taking possession and selling the collateral, court costs and reasonable attorney's fees. If the sale proceeds are not enough to pay you the unpaid balance of my loan and any interest I owe you, and to reimburse you for these expenses, I still will have to pay the difference. I am entitled to any excess if the sales proceeds are more than I owe you.

You also have all the rights and remedies regarding taking possession, retention and sale of the collateral and use of the proceeds as are permitted by the Uniform Commercial Code.

**Financing Statement**

You are authorized to file a Financing Statement.

**No Waiver**

Because you excuse one default by me does not mean later defaults will be excused.

I've read this agreement and received a copy. I understand it contains all my rights and responsibilities. No oral statements will be binding. All changes must be approved by you in writing. My heirs and legal representatives will also be responsible under this agreement.

Secured Party:                                              Borrower:

Dux Interiors, Incorporated........................... ..................................................................... date...................

                                                            ..................................................................... date...................

by .............................................id...........

title......................................... date...................



Addendum No. 3 ("Advertising Addendum")
to Duxiana License and Marketing
Agreement with _____

_____

Reference/Subject

**Section 7.4**: The Company's
Obligation to Assume
or Reimburse a Portion
of Local Advertising
Costs

Specifics

For the one-year period commencing
with the formal opening of the Shop,
the Company will pay or reimburse to
the Shop Owner, upon receipt of duly
completed Advertising Contribution
Requests in the form attached as
Exhibit A or other substantiating data
acceptable to the Company, an amount or
amounts equal to fifty percent (50%) of
total expenditures for local advertising
during such period (including expenses
for local advertising of the opening of
the Shop), provided, however, that the
Company's obligation for this period
shall not exceed $25,000.

For the one-year period commencing on
the first anniversary of the formal
opening of the Shop, the Company will
pay or reimburse to the Shop Owner, upon
receipt of duly completed Advertising
Contribution Requests or other substan-
tiating data acceptable to the Company,
amounts equal to one-half of total
expenditures for local advertising
during such calendar year up to, but not
exceeding, ten percent (10%) of the
aggregate amount invoiced to the Shop
for Dux Products purchased from the
Company (including amounts invoiced for
the Initial Purchases described in
Addendum No. 2) during the first one-
year period of operations.

The Company shall have no obligation to
pay or assume any portion of the costs
of local advertising for the Shop
incurred after the second anniversary of
the opening of the Shop.

Addendum No. 3 (Continued)
Page 2

Section 8.2:  Local
   Advertising Obligations
   of the Shop Owner

In the one-year period commencing with the formal opening of the Shop, and in each succeeding one-year period, you agree that you will expend on local publication and dissemination of advertisements or advertising materials or texts furnished or otherwise approved by the Company amounts not less than –

For the first one-year period:  An amount not less than one-half the Shop's Minimum Advertising Budget set forth below, i.e., one-half of $50,000, or $25,000.

For the next succeeding one-year period: An amount not less than ten percent (10%) of the aggregate amount invoiced to the Shop for Dux Products purchased from the Company (including amounts invoiced for the Initial Purchases described in Addendum No. 2) during the first one-year period of operations.

For each succeeding calendar year:  An amount not less than 5% of Gross Sales of the Shop for such year.

The minimum amounts to be expended by you for advertising as set forth above are exclusive of any amounts which the Company may contribute or reimburse to you with respect to local advertising under Section 7.4 or Addendum No. 3 or otherwise.

Section 8.2:  The Shop's
   "Minimum Advertising
   Budget"

The "Minimum Advertising Budget" for the first one-year period commencing with the opening of the Shop, is $50,000.

Note:  After the first year of operations, there is no defined "Minimum Advertising Budget" but the effect of sections 7.4 and 8.2 is to require local advertising expenditures for the second year in amounts equal to 20% of the aggregate of amounts invoiced to the Shop for Dux Products purchased from the Company in the first twelve

Addendum No. 3 (Continued)
Page 3

months of operations, with the Company bearing
one-half of such minimum amount.　For each
subsequent year, the effective minimum budget
for local advertising is 5% of Gross Sales of
the Shop, with the full expense being borne by
the Shop Owner.

Section 8.3:　　　　　Within ten days after its receipt of the
text and proof of any proposed advertis-
ing or the script or recording of any
proposed television or radio advertis-
ing, the Company agrees to advise you
whether it will approve your use of such
advertising or, if such approval is
conditional, the terms and conditions
upon which it will be approved; if the
Company shall not have so responded to
any such submission within ten days, the
proposed advertising shall be deemed
acceptable to the Company, provided,
however, that unless the Company shall
have specifically approved the proposed
advertising it may not be required to
pay or assume any portion of the cost
thereof, whether under section 8.2 or
otherwise.



Addendum No. 3 (Continued)
Page 4

[Exhibit A to Addendum 3]


[Advertising Contribution Request]



Duxiana International A.B.
c/o Dux Interiors, Incorporated
305 East 63rd Street
New York, New York 10021

Dear Sirs:

        This is to advise that we have expended the following
amounts on local advertising for our Duxiana Shop:

| Date | Amount | Paid to | For the following advertising: |
|------|--------|---------|--------------------------------|
|      | $      |         |                                |



        The text or script of each of the advertisements referred
to above has previously been furnished to and approved by Dux
Interiors, Inc.  Copies of each of the advertisements as
published, and of the invoices which we have received and paid
therefor, are attached.

        We hereby request reimbursement of the share of the
above-described costs which you have agreed to assume pursuant to
section 7.4 of our Agreement dated as of February 1, 1990 and
Addendum No. 3 thereto.

                            Sincerely yours,

                            [                    ]


                    By: _____



Addendum No. 3

# ADVERTISING RESPONSE REPORT

**SHOP LOCATION :**

| DATE OF AD : | PUBLICATION : | COUPON : |
|---|---|---|

| DATES | MAIL RESPONSE | PHONE RESPONSE | VISITS | SALES FROM AD |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**COMMENTS :**

FAX TO:

DUX Interiors Inc. 305 East 63rd Street, New York, N.Y. 10021 · (212) 752-3897 · Telex 420215 · Fax 212-319-9638

Addendum No. 4  ("Dux" and "Duxiana"
Trademarks: Approved Style and Format)
to Duxiana License and Marketing
Agreement with _____
_____

### Reference/Subject

### Section 8.4:    Trademark Usage

### Specifics

The trademark "Dux" may not be used by
the Shop Owner/Licensee in any way
except to refer to products sold under
the "Dux" trademark or in ways
expressly approved in writing by the
Company.

The trademark "Duxiana" may be used to
describe or refer to your Shop as part
of your trade name, in the manner
authorized by section 3.2, and may
otherwise be used only in the follow-
ing styles and formats:



Addendum No. 5 (License Fee Addendum)
to Duxiana License and Marketing
Agreement with _____

_____

Reference/Subject                    <u>Specifics</u>

Section 12:   License Fees           No initial fee and no royalties are
                                     payable with respect to the license
                                     granted to you hereunder.  The Company
                                     reserves the right, however, on not
                                     less than six (6) months prior written
                                     notice to you, to charge you a con-
                                     tinuing royalty for the license
                                     granted hereunder in amounts not
                                     greater than 2% of your Gross Sales of
                                     the Shop from and after the effective
                                     date specified in such notice; if the
                                     Company exercises this right, royal-
                                     ties will be payable monthly.

*This communication to be part of Addendum of Duraria Marketing - licensing agree*
*Sharyn Johnson - Presiden*
*Johnson Design Associates, In*

P.O. Box 622
San Anselmo, CA  94979-0622
March 1, 1991

Dear Garvan,

There are some items that were agreed upon, that were omitted from the contract I received in January.

Section 3.2:
In the event we are held to have infringed another's trademark or name and are thereby required to discontinue use of our mark(s), we would be willing to reimburse for reasonable out-of-pocket costs incurred by Sharon and her company in removing or discarding signs, letterhead stationery and similar artifacts bearing the infringing marks.  (letter dated October 16, 1990 from Mr. Krantz)

Section 5.2
We are also willing to agree that the Licensee will be entitled to 30 days prior written notice of any price increase. (Letter of October 3, 1990, item #3, from Mr. Krantz)

Section 14
We are further willing to agree to not unreasonably withhold approval of transfers to third parties in substantially the same language you propose. (letter of October 3, 1990, from Mr. Krantz)

This was in response to the following from Mr. Tannenbaum: Section 14 should permit transfers(a) of stock or assets to spouse, children, trusts therefor and affiliated entities and (b) to third parties upon the Company's approval which will not be unreasonably withheld and will be given after considering the transferee's creditworthiness, business skills, character and reputation and simiar factors and further providing that the transferee will agree to perform Licensee's obligation under the Agreement.

I am signing the contract subject to these three items, as per my agreement with you and Christer. I have changed the"Effective Date" to March 1,1991, and have added the "Site" to the Addendum.

I look forward to meeting with you soon.

Sincerely,

Sharyn Johnson

Sharyn Johnson