1   ROBERT S. BOULTER (SB NO. 153549)
    rsb@lb-attorneys.com
2   PETER C. LAGARIAS (SB NO 77091)
    pcl@lb-attorney.com
3   LAGARIAS & BOULTER, LLP
    1629 Fifth Avenue
4   San Rafael, California 94901-1828
    Telephone: (415) 460-0100
5   Facsimile: (415) 460-1099

6

7   Attorneys for Plaintiffs

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11

12  JOHNSON DESIGN ASSOCIATES, INC., a   )   Case No. 3:07-CV-05754-MMC
    California corporation and SHARYN     )
    JOHNSON, an individual                )
13                                        )   PLAINTIFFS' OPPOSITION TO MOTION
                                          )   TO DISMISS
14              Plaintiff,                 )
         vs.                              )   Date: January 18, 2008
15  DUX INTERIORS, INC., a New York       )   Time: 9:00 a.m.
    corporation, BO GUSTAFSSON, an individual )   Place: 450 Golden Gate Avenue
16                                        )           San Francisco, CA
                Defendants.               )           Courtroom 7
17                                        )   Judge: Hon. Maxine M. Chesney
                                          )
18                                        )
                                          )
19  _____ )

20

21

22

23

24

25

26

27

28
                                    i

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................1

II.   STATEMENT OF ISSUES TO BE DECIDED ...................................................2

III.  STATEMENT OF FACTS ....................................................................................2

IV.   ARGUMENT ........................................................................................................3

      A.    Dismissal Is Not Appropriate Under The Federal Pleading Rules .........3

      B.    The Plaintiffs Have Stated a Claim for Breach of the Contract. ............5

            1.    The Plaintiffs Have Stated a Claim for Wrongful Termination. ..................5

            2.    The Plaintiffs Have Stated Claims for Other Breaches of Contract
                  and the Implied Covenant of Good Faith. ...................................7

                  a.    Providing substandard and sub-legal goods ....................................7

                  b.    Failing to honor warranty and other reimbursement
                        requirements ......................................................................7

                  c.    Failing to properly advertise the brand and services and
                        requiring Plaintiffs to waste money on ineffectual
                        advertising ........................................................................7

                  d.    Failing to provide Plaintiffs like prices, discounts, and
                        incentives offered to others similarly situated ...............................7

                  e.    Diverting plaintiffs customer orders to themselves and other
                        more favored franchisees ..................................................7

                  f.    Raising prices without the required thirty-day notice; ....................8

                  g.    Interfering with relations Plaintiffs' employees............................8

ii

C.  The Plaintiffs Have Stated a Claim for Unfair Competition.....................................8

D.  The Plaintiffs Have Stated a Claim for Injunctive Relief. .......................................9

E.  Sharyn Johnson Has Stated a Claim for Intentional Infliction of Emotional Distress...................................................................................................................10

F.  Plaintiffs' Have Stated a Section 17200 Claim.....................................................12

G.  The Plaintiffs Concede Their Claim for Conversion. .............................................13

H.  The Plaintiffs Concede Their Claim for Unjust Enrichment. .................................13

I.  Even If Found To Be Deficient, Any Dismissal Should Be With Leave To Amend:..................................................................................................................13

V.  CONCLUSION ............................................................................................................14

1

## **TABLE OF AUTHORITIES**

2

## **CASES**

3

4

*ABC International Traders, Inc. v. Matsushita Electric Corp.,* 14 Cal.4th 1247, 61
    Cal.Rptr.2d 112 (1997) ..................................................................................................8

5

*Alcorn v. Anbro Engineering, Inc.,* 2 Cal.3d 493 (1970) ...............................................11

6

*Allied Grape Growers v. Bronco Wine Co.,* 203 CA3d 432, 249 CR 872, 883
    (1988) ...........................................................................................................................12

7

*Bennett v. Schmidt,* 153 F3d 516 (7th Cir. 1998)............................................................4

8

*Big Bear Lodging Ass'n v. Snow Summit, Inc.,* 182 F.3d 1096 (9th Cir. 1999) ............14

9

*Brever v. Rockwell Int'l Corp.*, 40 F. 3d 1119 (10th Cir. 1994)......................................4

10

11

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th
    163, 83 Cal.Rptr.2d 548 (1999) ...................................................................................13

12

*Davis v. Schere,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ........................4

13

*Fletcher v. Western National Life Ins. Co.,* 10 Cal.App.3d 376 (1970) ........................11

14

*Gilligan v. Jamco Develop. Corp.*, 108 F3d 246 (9th Cir. 1997).....................................4

15

*Glenn K. Jackson Inc. v. Roe* 273 F.3d 1192 (9th Cir. 2001) ........................................12

16

*Independent Ass'n of Mailbox Center Owners, Inc. v. Superior Court* 133
    Cal.App.4th 396, 410, 34 Cal.Rptr.3d 659, 670 (2005)..............................................12

17

*Lucas v. Dep't of Corr.*, 66 F.3d 245 (9th Cir. 1995)......................................................4

18

*Orkin Exterminating Co., Inc. v. FTC* 849 F2d 1354 (11th Cir. 1988) ..................12, 13

19

*Polich v. Burlington N., Inc.,* 942 F.2d 1467 (9th Cir. 1991) ........................................14

20

*Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).......................4

21

*Self Directed Placement Corp. v. Control Data Corp.* 908 F2d 462 (9th Cir. 1990) .....9

22

*Stanley v. University of So. Calif.* 13 F3d 1313 (9th Cir. 1994) ...................................10

23

*Superior Motels, Inc. v. Rinn Motor Hotels, Inc.* 195 Cal.App.3d 1032 (1987)............6

24

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002 ........9

25

*Tercica, Inc. v. Insmed Inc.,* 2006 U.S. Dist. LEXIS 41804 (N.D. Cal. 2006)..............14

26

*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.* 60 F.3d 27 (2 nd Cir.
    1995) ............................................................................................................................10

27

28

*United States v. Redwood City*, 640 F2d 963 (9th Cir. 1981).........................................4

*Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc*., 546 U.S. 164, 126 S.Ct. 860, 870, 163 L.Ed.2d 663 (2006) ............................................................................9

*Wallis v. Superior Court,* 160 Cal App 3d 1109, 207 Cal Rptr 123 (1984).................................11

*Weinberger v. Romero–Barcelo* 456 US 305, 102 S.Ct. 1798 (1982) .........................................10

## **STATUTES**

Fed. R. Civ. P. 12 .................................................................................................................3, 4

Fed. R. Civ. P. 15 ......................................................................................................................5

Fed. R. Civ. P. 8 ........................................................................................................................4

## PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

### I.    INTRODUCTION

Defendants' motion to dismiss should be denied because the complaint[1] sets forth a short and plain statement of the facts entitling the plaintiffs to relief.   Since 1991, Plaintiff Johnson Design Associates, Inc. ("JDA") has been the exclusive licensed distributor/franchisee of the Dux Interiors, Inc. ("Dux") line of beds and related products for Marin and Sonoma Counties. Plaintiff Sharyn Johnson (Johnson) is the owner of JDA.  Johnson, 62 years old, relies on the business to provide her income.  The contract grants JDA 1) "evergreen" renewals and 2) permits termination only for cause after a notice and cure period.

After this sixteen- year history during which JDA purchased and sold millions of dollars of Dux merchandise, Dux served JDA with a termination notice on October 12, 2007 alleging that JDA's failure to utilize the tiny registered trademark " ® " symbol in connection with a <u>single</u> customer postcard mailing constituted an "incurable" breach justifying termination of the entire agreement.  Instead of using the ® mark in connection with the mailing, Plaintiff used the "tm" designation.  The error was due to a mistake by the store manager and using a new vendor for printing. Case law is clear that termination is not an available remedy under these circumstances.

Plaintiffs' allege that the termination is wrongful and a pretext by Dux and Defendant Gustafsson (Dux's president) to convert Plaintiffs' valuable business to the benefit Dux and Gustafsson, and their associates.  Indeed, the termination follows through on previous threats and intimidation by Gustafson and Dux to Plaintiffs that they should sell their business to Dux's associates (including one Dan Udouch, a San Francisco resident) "while they still have something to sell."   Sharyn Johnson also alleges this conduct was outrageous and intended to cause her such emotional distress that she would capitulate to Defendants' unlawful demands and termination.

Plaintiffs also allege Dux failed to properly warranty and manufacture products causing

---

[1] Plaintiffs filed a signed complaint with this court and have a copy of it.  If a defect in the signature does in fact exist, it will be cured. It is possible and electronic version of the complaint sent out for service was not printed with the signature.  Defendants have responded to the complaint and have suffered not any prejudice.

1

1    damages.  And Dux extended discounts and incentives to other dealers not disclosed and made

2    available to Plaintiffs.  These facts give rise to claims under breach of contract and unfair

3    competition theories.  In sum, the complaint states facts and claims for relief and Defendants

4    motion should to dismiss should be denied.

5

6    **II.    STATEMENT OF ISSUES TO BE DECIDED**

7        Whether Plaintiffs have alleged claims entitling them to relief and, if not, whether

8    Plaintiffs must provide a more definite statement or otherwise amend their pleadings.

9

10   **III.    STATEMENT OF FACTS**

11       Plaintiff Johnson Design Associates, Inc. is a licensed distributor/franchisee of the Dux

12   Interiors, Inc. ("Dux") line of beds and ancillary items under contract entered into in 1991.

13   Complaint ¶ 14.  Plaintiff Sharyn Johnson is the owner of Johnson Design. Complaint ¶ 13. JDA

14   has served Dux as a distributor/franchisee continuously since 1991 pursuant to a contract which

15   grants it 1) "evergreen" renewals (Gustafsson Dec. Ex. A, § 15.1 p. 29 of 48) "…the Agreement

16   shall not expire, and shall continue in effect at the end of the Initial Term and each of the

17   Renewal Terms…") and 2) permits termination only for cause after a notice and cure period (Id. §

18   15.2,  p. 19 of 48) "either party may terminate this Agreement….a) if the other party shall be in

19   default…and shall have failed to correct or cure such default within thirty Calendar days.…").

20   See also Complaint ¶ 14.

21       After this sixteen- year history during which JDA purchased and sold millions of dollars

22   of Dux merchandise, Dux served JDA with a termination notice on October 12, 2007 alleging that

23   its failure to utilize the tiny registered trademark ® symbol in connection with a <u>single</u> customer

24   mailing constituted an "incurable" breach.  Complaint ¶ 14; Gustafsson Dec. Ex. 2, p. 55. Instead

25   of using the ® mark in connection with the mailing, Plaintiff used the "tm" designation.

26   Complaint ¶ 14. The error was due to a mistake.  Complaint ¶ 14.

27       The termination is alleged to be wrongful and a pretext by Dux and Defendant Gustafsson

28   (Dux's president) to convert Plaintiffs' valuable business to the benefit Dux and Gustafsson, and

2

their associates. Complaint ¶ 15.   Indeed, Dux, Gustafsson, and other associates to be identified

have engaged in a similar pattern across the country in recent years of terminating Dux

distributor/franchisees and converting their business for their own accounts.  Complaint ¶ 16. And

in 2006 and 2007, Gustafson and Dux repeatedly threatened and intimidated Plaintiffs that they

should sell their business Dux's associates (including one Dan Udoutch, a San Francisco resident)

"while they still have something to sell."  Complaint ¶¶ 15-17.

     With respect to injunctive relief, Plaintiffs complain that breaches complained of were

immaterial, that the termination was wrongful, and that if the termination is permitted to stand,

Plaintiffs will suffer irreparable harm including the loss of livelihood and a substantial

investment. Complaint ¶¶ 24-26.  Regarding breach of contract, JDA complains that Dux

breached the agreement and the implied covenant of good faith by wrongful termination and other

actions.  Complaint ¶¶ 33, 35.   Regarding unfair competition, the complaint alleges that Dux

failed to provide Plaintiffs the same prices, discounts, and incentives it provides to other dealers

like Plaintiffs.  Complaint ¶ 34.  Regarding conversion, Plaintiffs allege that the termination of

the agreement under these facts amounts to conversion of her property. Complaint ¶ 38.

Regarding infliction of emotional distress, Ms Johnson alleges that the termination of the

agreement (i.e wrongful under these facts) and the conduct of defendants leading up to the

termination was designed to inflict emotional distress and force capitulation.  Complaint ¶¶  42-

43.  Plaintiffs claim that if the termination is permitted, Defendants will have been unjustly

enriched by the wrongful appropriation of Plaintiffs' business.  Complaint ¶ 46.  Finally,

Plaintiffs claim that the scheme to terminate her franchise and convert to the benefit of Dux, Mr.

Gustafsson, and their associates constitutes statutory unfair competition.    Complaint ¶ 50.


IV.   **ARGUMENT**

   A.   **Dismissal Is Not Appropriate Under The Federal Pleading Rules**

     Federal courts view Federal Rule of Civil Procedure 12 (b) (6) motions with disfavor

because of the lesser role pleadings play in federal practice and the liberal policy regarding

amendment.   "The motion to dismiss for failure to state a claim is viewed with disfavor and is

3

1   *rarely granted.*" *Gilligan v. Jamco Develop. Corp.*, 108 F3d 246, 249 (9th Cir. 1997) (emphasis

2   added; internal quotes omitted); *United States v. Redwood City*, 640 F2d 963, 966 (9th Cir. 1981)

3   [12(b)(6) dismissal is proper only in "extraordinary" cases.].

4                    Instead of lavishing attention on the complaint until the plaintiff

5                    gets it just right, a district court should keep the case moving—if

6                    the claim is unclear, by requiring a more definite statement under

7                    Rule 12 (e), and if the claim is clear but implausible, by inviting a

8                    motion for summary judgment.

9   *Bennett v. Schmidt*, 153 F3d 516, 518 (7th Cir. 1998).

10          The Federal Rules of Civil Procedure require that a pleading asserting a

11                    claim for relief ⋯ contain ⋯ (1) a *short and plain* statement of the

12                    grounds upon which the court's jurisdiction depends ⋯ (2) a *short*

13                    *and plain* statement of the claim showing the pleader is entitled to

14                    relief, and (3) a demand for judgment for the relief the pleader

15                    seeks.

16  Fed. R. Civ. P. 8 (a) (emphasis added).

17          Rule 8 concludes with the admonition: "[a]ll pleadings shall be construed as to do

18  substantial justice." Fed. R. Civ. P. 8 (f).  "The issue is not whether a plaintiff will ultimately

19  prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v.*

20  *Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), overruled on other grounds by

21  *Davis v. Schere*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). Finally, the burden of

22  proof in connection with a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

23  lies with the moving party.  *Brever v. Rockwell Int'l Corp.*, 40 F. 3d 1119, 1125 (10th Cir. 1994).

24  And in the event that a motion to dismiss for failure to state a claim has merit, the court will

25  generally permit the pleader to amend unless an amendment would be futile. *Lucas v. Dep't of*

26  *Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). If the court grants a motion to dismiss a complaint, it

27  must then decide whether to grant leave to amend. The Court should "freely give[]" leave to

28  amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant, . . .

4

1    undue prejudice to the opposing party by virtue of... the amendment, [or] futility of the

2    amendment. . . ." Fed. R. Civ. P. 15 (a).

3

4        **B.    The Plaintiffs Have Stated a Claim for Breach of the Contract**

5            **1.**    The Plaintiffs Have Stated a Claim for Wrongful Termination.

6        Dux's primary argument goes to the merits of this case and is not properly decided in this

7    motion to dismiss.   Dux complains that the termination was proper on the merits because the

8    breach was "incurable" and ergo that Plaintiffs cannot state a claim.  Dux is wrong.

9        The contract neither defines the term incurable breach nor does it provide termination in

10   such cases.  Section 15.2 of the contract provides in pertinent part that:

11
                Without prejudice to any remedy either party may have for breach
12              or nonperformance of this Agreement, either party may terminate
                this Agreement at any time during the Initial Term of this
13              Agreement or any Renewal Period, upon the occurrence of any of
                the following events:
14

15              If the other party shall be in default of any of its obligations here-
                under and shall have failed; to correct or cure such default within
16              thirty (30) calendar days after having received written notice of
                such default;
17

18              provided however, that if the Company is the terminating party, it
                shall have given you at least 60 days written notice of the reasons
19              for termination of the agreement as described above.

20       As noted, the plain language of the contract does not provide for any category of

21   "incurable" default for termination.  Termination is reserved for only the most drastic breaches

22   that are not cured after proper notice. The contract is in accord with California law that

23   termination is a most drastic remedy and not available for breaches of the kind at issue here.

24   Simply put, California law does not permit termination of the contract where Plaintiffs used a

25   "tm" instead of a ® symbol on a single customer mailing.  At worst, Plaintiffs committed a

26   nonmaterial breach of the agreement justifying damages, if any.  Termination was entirely

27   disproportionate to the offense and can only be properly explained in light of the ulterior motives

28   and malice Plaintiffs have alleged.

5

1

2

3

4

5

> The law sensibly recognizes that although every instance of noncompliance with a contract's terms constitutes a breach, not every breach justifies treating the contract as terminated. [Citations] Following the lead of the Restatements of Contracts, California courts allow termination only if the breach can be classified as "material," "substantial," or "total." [Citations]

6

7

8

9

10

11

12

13

14

15

16

17

18

> Cardozo had occasion to examine the distinction between material and inconsequential breaches in his landmark decision regarding substantial performance of a construction contract. "The courts never say that one who makes a contract fills the measure of his duty by less than full performance. They do say, however, that an omission, both trivial and innocent, will sometimes be atoned for by allowance of the resulting damage, and will not always be the breach of a condition to be followed by a forfeiture." ( *Jacobs & Youngs v. Kent* (1921) 230 N.Y. 239, 241, 129 N.E. 889.) … Nowhere will change be tolerated, however, if it is so dominant or pervasive as in any real or substantial measure to frustrate the purpose of the contract.... The question is one of degree, to be answered, if there is doubt, by the triers of the facts.... We must weigh the purposes to be served, the desire to be gratified, the excuse for deviation from the letter, the cruelty of enforced adherence.... [T]he law will be slow to impute the purpose, in the silence of the parties, where the significance of the default is grievously out of proportion to the oppression of the forfeiture." ( *Id.* at pp. 243-244, 129 N.E. 889.)

19

20

*Superior Motels, Inc. v. Rinn Motor Hotels, Inc*. 195 Cal.App.3d 1032, 1051 (1987).

The mailing of the postcard without the ® was an *innocent mistake*.  A copy of the

21

postcard is attached to hereto as Exhibit A.  No ordinary person receiving this postcard would

22

know or care whether the term ® or "tm" was used.  Moreover, while Plaintiffs could send a

23

corrective notice, it would be a wasteful exercise.  However, if required to preserve her

24

dealership, Plaintiff will do so.  Plaintiffs did not do so and did not offer to do so because

25

Defendants have always asserted the breach was incurable.  Finally, Plaintiffs note that Dux and

26

Mr. Gustafsson have also mailed marketing materials without the ® making their lengthy

27

arguments about protection of the trademark hypocritical.  See Exhibit B hereto.  In sum,

28

6

Plaintiffs have properly pled a claim for wrongful termination of the agreement.

    **2.**    The Plaintiffs Have Stated Claims for Other Breaches of Contract and the Implied Covenant of Good Faith.

Plaintiffs have other miscellaneous claims for breach of contract in paragraph 33.   These claims are sufficiently identified for Defendants to know what they are referring to and to conduct discovery on the matters.

    **a.**    Providing substandard and sub-legal goods

This claim refers to Dux providing flammable bedding materials that were the subject of a recall.  Dux knows well the nature of this claim.

    **b.**    Failing to honor warranty and other reimbursement requirements

This claim refers to Dux failing to provide reimbursement to plaintiffs who made good on warranty claims to customers.  Section 10.2 of contract states Dux will reimburse JDA for any expenses dealing with warranty claims.  Dux has not honored this part of the agreement and has not reimbursed JDA for expenses submitted in the past.  Also, JDA has been required to order warranty replacements and warehouse them at a cost of $125 per month when Dux should be bearing that expense.

    **c.**    Failing to properly advertise the brand and services and requiring Plaintiffs to waste money on ineffectual advertising

This claim refers to Dux failing to provide effective advertising and continuing to place ineffective advertising in the fact of complaints regarding the same.

    **d.**    Failing to provide Plaintiffs like prices, discounts, and incentives offered to others similarly situated

This claim is self explanatory.

    **e.**    Diverting plaintiffs customer orders to themselves and other more favored franchisees

This claim refers to Dux selling goods directly to a customer of plaintiffs in breach of the

1    agreement.

2                       **f.**     Raising prices without the required thirty-day notice

3        This claim refers to Dux raising prices to Plaintiff in violation of section 5.2 of the

4    agreement.  See Letter Gustafsson Dec., Ex. B, page 48 of 48.

5                       **g.**     Interfering with relations Plaintiffs' employees

6

7        This claim refers to Defendants sending termination notices by fax to the Plaintiffs store

8    location with full knowledge that Ms. Johnson is not on the premises full time and with certainty

9    that her employees would see such notices.  Such notices were sent with the intention to disrupt

10   those employment relations by causing the employees to fear their employment was in jeopardy

11   and causing them to begin looking for new employment.

12   **C.      The Plaintiffs Have Stated a Claim for Unfair Competition**

13

14       This claim arises out of Dux's alleged failure to provide like discounts and incentives to

15   all dealers.  Paragraph 34 of the complaint provides:

16              Dux's failure to provide Plaintiffs like prices, discounts, and
                incentives offered to others similarly situated also constitutes
17              common law unfair competition as well as violates the federal and
                state antitrust law entitling Plaintiffs to treble damages for such
18              conduct.

19

20       This claim implicates California Business and Professions Code Section 17045 which

21   provides:
                The secret payment or allowance of rebates, refunds, commissions,
22              or unearned discounts, whether in the form of money or otherwise,
                or secretly extending to certain purchasers special services or
23              privileges not extended to all purchasers purchasing upon like terms
                and conditions, to the injury of a competitor and where such
24              payment or allowance tends to destroy competition, is unlawful.

25

26       In *ABC International Traders, Inc. v. Matsushita Electric Corp.,* 14 Cal.4th 1247, 61

27   Cal.Rptr.2d 112, 115 (1997), the California Supreme Court approved of such secondary line price

28   discrimination cases.   The federal corollary is the Robinson-Patman Act (15 U.S.C. § 13 (a)) that

                                                8

prohibits sellers from discriminating in price between at least two purchasers of goods of like

grade and quality where the effect may be to substantially lessen competition.  To establish such a

violation, Plaintiffs must be able to show that (1) the sales were made in interstate commerce; (2)

the goods purchased were of like grade and quality; (3) the Defendant discriminated in price

between the Plaintiffs and another purchaser; and (4) the effect of the discrimination may be to

injure, destroy, or prevent competition to the advantage of the favored purchaser. *Volvo Trucks N.*

*Am., Inc. v. Reeder-Simco GMC, Inc*., 546 U.S. 164, 126 S.Ct. 860, 870, 163 L.Ed.2d 663 (2006).

This complaint provides fair notice to Defendants of the claims regarding price

discrimination.  Moreover, it is not always necessary to specify the precise nature of the claim

asserted as long as the *facts* alleged put defendant on notice thereof. In *Self Directed Placement*

*Corp. v. Control Data Corp*. 908 F2d 462, 466 (9th Cir. 1990) the complaint alleged claims for

copyright infringement, violation of trade secrets and fraud, but not unfair competition. However,

the facts alleged supported recovery for unfair competition, and plaintiff referred to "unfair

competition" in its jurisdictional statement and prayer for relief. This was enough to put

defendant *on noti*ce of the unfair competition claim. Thus, the federal rules do not require a

plaintiff to identify the statute under which the claims seek relief.

The appendix to the Rules of Civil Procedure contains models that illustrate the short and

simple allegations that Fed.R.Civ.P. 8 (a) calls for. It is enough to name the plaintiff and the

defendant, state the nature of the grievance, and provide enough information that will let the

defendant investigate. A full narrative is unnecessary. See, e.g., *Swierkiewicz v. Sorema N.A.,* 534

U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002).

### D.    The Plaintiffs Have Stated a Claim for Injunctive Relief.

Plaintiffs have not yet moved for injunctive relief because they have received assurances

that Dux will continue to supply Plaintiffs until March 19, 2008.  Plaintiffs will move the court

for a preliminary injunction to be heard in February if the parties cannot resolve their differences.

It is true that an injunction is an equitable remedy but it must be pled and prayed for.

"The basis for injunctive relief (preliminary or permanent) in the federal courts has always been

*irreparable injury* and the *inadequacy of legal remedies*." *Weinberger v. Romero–Barcelo* 456

US 305, 312, 102 S.Ct. 1798, 1803 (1982) (emphasis and parentheses added); *Stanley v.*

*University of So. Calif.* 13 F3d 1313, 1320 (9th Cir. 1994). Here, the Plaintiffs will establish both

factors. The termination of the Plaintiffs' contract under these circumstances constitutes

irreparable herm. Federal courts have consistently held that irreparable harm is present where, as

here, a plaintiff is denied the ability to market its sole product line pursuant to an exclusive

distribution agreement.

> We have found irreparable harm where a party is threatened with
> the loss of a business. In *Semmes Motors, Inc. v. Ford Motor Co.,*
> 429 F.2d 1197 (2d Cir.1970), a father-and-son car dealership was
> threatened with termination of its franchise by the manufacturer.
> We affirmed a finding of irreparable injury on the grounds that
> termination of the franchise would "obliterate" the dealership and
> that the right to continue a business "is not measurable entirely in
> monetary terms." *Id.* at 1205; *see also Roso-Lino Beverage*
> *Distribs., Inc. v. Coca-Cola Bottling Co.,* 749 F.2d 124, 125-26 (2d
> Cir.1984) (per curiam) (finding irreparable harm from loss of
> "ongoing business representing many years of effort and the
> livelihood of its husband and wife owners"). We have also found
> irreparable harm in the loss of a relatively unique product…..
> ….
>
> We believe that the governing principle is as follows. Where the
> availability of a product is essential to the life of the business *or*
> increases business of the plaintiff beyond sales of that product-for
> example, by attracting customers who make purchases of other
> goods while buying the product in question-the damages caused by
> loss of the product will be far more difficult to quantify than where
> sales of one of many products is the sole loss. In such cases,
> injunctive relief is appropriate. T

*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 37 -38 (2 nd Cir. 1995)


### E.    Sharyn Johnson Has Stated a Claim for Intentional Infliction of Emotional Distress.

This claim arises out of Dux's and Gustafsson's conduct in trying to force Ms. Johnson to

capitulate and sell her business and its wrongful and pretextual termination of the contract. Ms.

Johnson relies on this business for income to support herself and for her retirement. Ms. Johnson

is 62 years old. Paragraphs 16 and 17 of the complaint describe the harassment and intimidating

10

conduct designed to inflict emotional distress on Ms. Johnson.  Paragraph 42 and 43 provide:

> Gustafsson and other Dux employees have intentionally and/or recklessly engaged in conduct toward the Ms. Johnson that is extreme and outrageous, with intent to cause her emotional harm and relinquish her franchise.  Moreover, the wrongful a pretextual termination was intended to and did cause emotional harm.
>
> As a direct and proximate result of the Defendants' actions, Johnson has suffered severe and unnecessary anxiety, mental anguish and emotional distress, and in some instances such emotional distress has manifested itself physically.

These facts state a claim for emotional distress.  The California Supreme Court has described the elements for the tort of Intentional Infliction of Emotional Distress as follows: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiffs suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Fletcher v. Western National Life Ins. Co.,* 10 Cal.App.3d 376, 394 (1970); *Alcorn v. Anbro Engineering, Inc.,* 2 Cal.3d 493, 497-499 (1970).  Moreover, severe emotional distress "may consist of any highly unpleasant mental reactions such as fright, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment or worry." *Fletcher v. Western Nat. Life Ins. Co.,* 10 Cal.App.3d 376, 397 (1970).

The extreme and outrageous nature of a defendant's conduct is often determined by what he or she did and what relation or position of actual or apparent power he or she abused to damage plaintiff's interests. These positions or relationships may take many forms. Intentional abuse of a position of financial control over a plaintiff may also qualify as extreme and outrageous conduct. See *Wallis v. Superior Court,* 160 Cal App 3d 1109, 207 Cal Rptr 123 (1984) (laid off employee sued for intentional infliction of emotional distress alleging that the termination of previously promised monthly payments constituted outrageous behavior). And the California Supreme Court has emphasized the significance of the plaintiff's employee status, stating that a plaintiff's status as an employee should entitle him or her to a greater degree of protection from insult and outrage than if he or she were a stranger to defendants. *Alcorn*, 2 Cal

11

3d 493.  Here, given that the business contributes to Ms. Johnson's livelihood, it is closely akin to the employment context, and there is no question that Dux and Gustafsson have the power to damage her interests.  See also *Independent Ass'n of Mailbox Center Owners, Inc. v. Superior Court*  133 Cal.App.4th 396, 410, 34 Cal.Rptr.3d 659, 670 (2005)("These franchise agreements also resemble employment agreements to the extent that the franchisees' livelihoods are involved…)

### F.    Plaintiffs' Have Stated a Section 17200 Claim.

In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999), the court held that § 17200 "does not proscribe specific practices. Rather, as relevant here, it defines 'unfair competition' to include 'any unlawful, unfair or fraudulent business act or practice.' ... Its coverage is 'sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law.' " *Id.* at 180, 83 Cal.Rptr.2d 548, 973 P.2d 527. The tort encompasses practices which offend established public policy or that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *Podolsky v. First Healthcare Corp.,* 50 Cal.App.4th 632, 58 Cal.Rptr.2d 89 (1996).

*Glenn K. Jackson Inc. v. Roe*  273 F.3d 1192, 1203 (9th Cir. 2001).

Here, the plaintiffs allege that Defendants have scheme to terminate the contracts of plaintiffs and others to enrich themselves and their associates. Complaint ¶ 15, 50.  The systematic breaching of contracts has been held to be an unfair business practice.     *Orkin Exterminating Co., Inc. v. FTC* 849 F2d 1354, 1367–1368 (11th Cir. 1988); *Allied Grape Growers v. Bronco Wine Co.,* 203 CA3d 432, 450–451, 249 CR 872, 883 (1988).

Some of the oldest "unfairness" decisions involve sellers' refusals to live up to the terms of their contract. The Commission has often

12

> challenged sellers for traditional breaches of contract: failure to fill orders, delivery of inferior merchandise, refusal to return goods taken for repair, or refusal to return promised deposits. Recent trade regulation rules have focused on similar issues. These action have attracted little controversy. Breach of contract has long been condemned as a matter of law, economics, and public policy.

*Orkin*, 849 F.2d at 1367.

FTC Act decisions have been held to be persuasive regarding unfair competition.

> Accordingly, we believe we must devise a more precise test for determining what is unfair under the unfair competition law. To do so, we may turn for guidance to the jurisprudence arising under the "parallel" ( *Barquis v. Merchants Collection Assn., supra,* 7 Cal.3d at p. 110, 101 Cal.Rptr. 745, 496 P.2d 817) section 5 of the Federal Trade Commission Act (15 U.S.C. § 45(a)) (section 5). "In view of the similarity of language and obvious identity of purpose of the two statutes, decisions of the federal court on the subject are more than ordinarily persuasive."

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal.4th 163, 185, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999).

### G.   The Plaintiffs Concede Their Claim for Conversion.

Plaintiffs concede dismissal of their conversion claim.

### H.   The Plaintiffs Concede Their Claim for Unjust Enrichment.

Plaintiffs concede that their technical claim for unjust enrichment is not available separate and apart from other claims for relief.

### I.   Even If Found To Be Deficient, Any Dismissal Should Be With Leave To Amend:

Even if the Court determines that the Complaint fails to adequately allege facts or elements of a particular claim, absent unusual circumstances, dismissal without leave to amend is improper unless it is clear that the Complaint could not be saved by any amendment. *Polich v.*

13

*Burlington N., Inc.,* 942 F.2d 1467, 1472 (9th Cir. 1991). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Big Bear Lodging Ass'n v. Snow Summit, Inc.,* 182 F.3d 1096, 1101 (9th Cir. 1999) *quoting Hishon v. King & Spalding,* 467 U.S. 69, 73, 81 (1984). "[L]eave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Tercica, Inc. v. Insmed Inc.,* 2006 U.S. Dist. LEXIS 41804 (N.D. Cal. 2006) *citing Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986).

## V.    <u>CONCLUSION</u>

Plaintiffs have invested their savings and some sixteen years time in the Dux franchise. They believe they have been gravely harmed by Defendants' actionable conduct and have properly pled their claims for relief. Defendants' motion to dismiss should be denied. But if the Court is inclined to grant any of the requested relief, it should afford the Plaintiffs leave to amend their claims to cure any deficiencies.

Dated:  December 27, 2007                LAGARIAS & BOULTER, LLP


                                         /s/ Robert S. Boulter
                                  By:_____
                                         Robert S. Boulter

EXHIBIT A



# DUXIANA

ADVANCED TECHNOLOGY IN SLEEPING

Dear Friends,

**Don't forget! - Daylight savings ends on November 4th**

Shorter days mean longer nights, and more time in bed   Why not spend those hours snuggled comfortably in a DUX™ Bed?

And nothing says comfort like a DUX™ bed outfitted with the finest linen and down. Present this card and receive a credit of $800 towards bed accessories with the purchase of a queen or king size DUX™ Bed.* from Oct. 19th through Nov. 5th 2007.

**You'll enjoy those long winter nights - in your DUX™**

*Duxiana™, San Rafael*

*Call regarding other sizes  Not valid with any other offer  One year FINANCING available O A C

901 A Street, San Rafael • Tel (415) 459-0365

---

# DUXIANA

901 A Street, San Rafael, CA 94901

Presort
First Class
US Postage
PAID
Mail.Com





...into a DUX!

94901@3043

EXHIBIT B





## THE BEST OF THE WORLD... THE COMFORTS OF HOME

At Quintess, it's part of our promise to make you feel completely at ease no matter where you travel – so that every extraordinary destination worldwide welcomes you home with warmth – and the feeling that this is exactly where you belong.

Appointing every residence in perfect, luxurious comfort is just one of the ways we can assure travel experiences unlike anything you've imagined. The DUX beds you'll find in every Quintess home are the perfect example of the ultimate comfort you can expect. As an owner of a DUX bed, you know that after you've slept in such comfort, you'll never want to sleep on anything else. And as a member of Quintess, you'll never have to.

FOR MORE INFORMATION ON LIMITED-TIME CHARTER MEMBERSHIP OPPORTUNITIES
CALL 800 550 0324 OR VISIT QUINTESS.COM

Dear Mr. Lawrence Goodman,

As a current owner of a DUX bed, you understand the importance of ultimate comfort at home.

Now, with our newest partner, Quintess, you can experience the same level of luxurious comfort no matter where you travel in the world.

Quintess is the world's premier Luxury Residence Club and a company that I feel conducts its business with a level of sophistication and integrity equal to that of DUX. With an ever-increasing number of first-class residences spanning the globe, we are proud to announce that every home in the Quintess portfolio will be appointed with DUX beds.

A Quintess membership does far more than simply make all these amazing homes your own. It establishes an incredible new travel lifestyle for you and your family – offering extraordinary access and making every vacation an effortless adventure.

I invite you to call 800 550 0324 to discover all that Quintess can offer you – including a special limited-time Charter Membership opportunity.

Thank you for your time. And "sov gott" – sleep well.

Bo Gustafsson
President, DUX USA

**DUX**

( received May 2005 )