STEPHEN S. WALTERS (BAR NO. 54746)
MARK J. SEIFERT (BAR NO. 217054)
ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111-4074
Phone: (415) 837-1515
Fax: (415) 837-1516
E-Mail: swalters@allenmatkins.com
mseifert@allenmatkins.com

Attorneys for Defendants
DUX INTERIORS, INC. and
BO GUSTAFSSON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JOHNSON DESIGN ASSOCIATES, INC., a California corporation, and SHARYN JOHNSON, an individual,

Plaintiffs,

v.

DUX INTERIORS, INC., a New York corporation, and BO GUSTAFSSON, an individual,

Defendants.

Case No. C07-05754 MMC

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Date: January 18, 2008
Time: 9:00 a.m.
Place: 450 Golden Gate Avenue
San Francisco, California
Courtroom 7
Judge: Hon. Maxine M. Chesney

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

729702.01/SF

Case No. C07-05754 MMC
Defendants' Reply in Support of Motion to Dismiss Complaint

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Legal Standards Applicable to a Motion to Dismiss .......... 1

B. Johnson Fails to State a Claim for Breach of Contract Based on the Termination Because It Admits Both Breach and Failure to Cure .......... 2

1. The Termination Issue Can Be Decided on a Motion to Dismiss Because the Relevant Facts Are Undisputed .......... 3

2. Johnson Has Not Established That Its Breach Was Immaterial .......... 4

3. Johnson's Breach Was Incurable, and Johnson Concedes Making No Effort to Cure .......... 5

4. Johnson's Reliance on Another Advertisement Omitting the Trademark Registration Symbol Is a Red Herring .......... 6

C. Johnson's Opposition Confirms That the Other Assertions of Breach of Contract, and Unfair Competition, Must Be Dismissed as Impermissibly Vague and Conclusory .......... 7

D. Johnson Concedes That Dismissal of Its Conversion Claim Is Proper .......... 10

E. Johnson Does Not State a Claim for Intentional Infliction of Emotional Distress Because It Fails to Allege Facts Showing Extreme and Outrageous Conduct .......... 10

F. Johnson Concedes That Dismissal of Its Unjust Enrichment Claim Is Proper .......... 12

G. Johnson Does Not State a Claim Under Cal. Bus. & Prof. Code § 17200 Because It Has Identified No Improper Conduct on the Part of Dux .......... 12

H. Johnson Concedes That It Is Not Currently Seeking a Preliminary Injunction, and Johnson Cannot Meet the Standards for an Injunction in Any Event .......... 14

III. CONCLUSION .......... 14

LAW OFFICES
Allen Matkins Leck Gamble Mallory & Natsis LLP

729702.01/SF

(i)

Case No. C07-05754 MMC
Defendants' Reply in Support of Motion to Dismiss Complaint

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alcorn v. Anbro Eng'g, Inc.*, 86 Cal. Rptr. 88 (Cal. 1970) ........ 11

*Allied Grape Growers v. Bronco Wine Co.*, 249 Cal. Rptr. 872 (Cal. Ct. App. 1988) ........ 13, 14

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) ........ 2

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ........ 2, 12

*Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 83 Cal. Rptr. 2d 548 (Cal. 1999) ........ 13

*Cochran v. Cochran*, 76 Cal. Rptr. 2d 540 (Cal. Ct. App. 1998) ........ 10, 12

*Desaigoudar v. Meyercord*, 223 F.3d 1020 (9th Cir. 2000) ........ 9

*Foley v. Interactive Data Corp.*, 254 Cal. Rptr. 211 (1988) ........ 11

*Hewlett-Packard Co. v. Intergraph Corp.* No. C 03-2517 MJJ, 2003 WL 23884794 (N.D. Cal. Sept. 6, 2003) ........ 9

*Independent Ass'n of Mailbox Center Owners, Inc. v. Superior Court*, 34 Cal. Rptr. 3d 659 (Cal. Ct. App. 2005) ........ 11

*Jones v. Cmty. Redevelopment Agency* 733 F.2d 646 (9th Cir. 1984) ........ 9

*Kern Oil & Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380 (9th Cir. 1986) ........ 3

*McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) ........ 9

*Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.*, 268 F.3d 1133 (9th Cir. 2001) ........ 2

*Orkin Exterminating Co. v. FTC*, 849 F.2d 1354 (11th Cir. 1988) ........ 13, 14

*Pareto v. FDIC*, 139 F.3d 696 (9th Cir. 1998) ........ 2, 12

*Pino v. Ryan*, 49 F.3d 51 (2d Cir. 1995) ........ 2

**Page(s)**

*Romaneck v. Deutsche Asset Mgmt.*, No. C05-2473 TEH, 2005 WL 2171987 (N.D. Cal. Sept. 6, 2005) ..... 12

*Schneider v. Cal. Dept. of Corrections*, 151 F.3d 1194 (9th Cir. 1998) ..... 6

*Schneider v. TRW, Inc.*, 938 F.2d 986 (9th Cir. 1991) ..... 10, 12

*Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*, 241 Cal. Rptr. 487 (Cal. Ct. App. 1987) ..... 4

*Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053 (9th Cir. 2004) ..... 2

*Vess v. Ciba-Geigy Corp USA*, 317 F.3d 1097 (9th Cir. 2003) ..... 9

*Wallis v. Superior Court*, 207 Cal. Rptr. 123 (Cal. Ct. App. 1984) ..... 11

*Weinstein v. Saturn Corp.*, No. C-07-0348 MMC, 2007 WL 1342604, *1-*2 (N.D. Cal. May 8, 2007) ..... 3, 10

**Statutes**

15 U.S.C. § 1111 ..... 5

Cal. Bus. & Prof. Code § 17200 ..... 12

**Rules**

Fed. R. Civ. P. 12(b)(6) ..... 1, 2, 8

Fed. R. Civ. P. 12(e) ..... 1, 9

Fed. R. Civ. P. 15(a) ..... 2

Fed. R. Civ. P. 8(a) ..... 1, 8

Fed. R. Civ. P. 9(b) ..... 1

LAW OFFICES
Allen Matkins Leck Gamble Mallory & Natsis LLP

729702.01/SF

(iii)

Case No. C07-05754 MMC
Defendants' Reply in Support of Motion to Dismiss Complaint

## I. INTRODUCTION

The opposition brief ("Opposition") filed by Johnson[1] is remarkable for what it does *not* dispute. It expressly concedes that dismissal of the conversion and unjust enrichment claims is proper. Opposition at 13. It also concedes (as it must) that Johnson is not currently requesting a preliminary injunction. Opposition at 9. It expressly concedes (as does the Complaint) that Johnson failed to use the trademark registration symbol, which was one of the independent bases for the termination of the License Agreement. Opposition at 2, 5-6; Complaint ¶ 14. Of equal importance, the Opposition expressly concedes that, despite the assertion that the breach was minor and easily curable, Johnson has not made any effort to cure the breach. Opposition at 6. And, although it does not concede this point expressly, the Opposition does not dispute that the improper advertisement was never submitted to Dux for approval, which is a second—and independent—breach of the License Agreement that was identified in the termination notice.

These concessions and omissions bar recovery on each of Johnson's claims to the extent they are based on the termination of the License Agreement. Additionally, the Opposition effectively confirms that dismissal of Johnson's remaining claims is proper given the lack of legal support for Johnson's arguments and the absence of any suggestion that Johnson can plead additional facts to support those claims. Under these circumstances, the Motion should be granted, without leave to amend.

## II. ARGUMENT

### A. Legal Standards Applicable to a Motion to Dismiss

The Motion sets forth the legal standards under Federal Rules of Civil Procedure 8(a), 9(b), 12(b)(6) and 12(e) that apply to this case (Motion at 9-10), and Johnson does not seriously contest these requirements. Instead, Johnson asserts only that motions to dismiss are "disfavored" and that pleadings play a "lesser role" in federal practice. Opposition at 3-4. Johnson cannot

[1] This reply will use the same defined terms that appear in the motion to dismiss ("Motion"). Thus, the term "Johnson" will be used interchangeably to refer to Johnson Design Associates, Inc., Ms. Johnson, or both, unless otherwise indicated. The term "Dux" will be used interchangeably to refer to Dux Interiors, Inc., Mr. Gustafsson, or both. The term "License Agreement" will be used to refer to the license agreement between the parties, a copy of which appears as Exhibit A to the Gustafsson Declaration that was filed with the Motion.

LAW OFFICES
Allen Matkins Leck Gamble Mallory & Natsis LLP

729702.01/SF

Case No. C07-05754 MMC
Defendants' Reply in Support of Motion to Dismiss Complaint

change the reality, however, that Rule 12(b)(6) requires dismissal where there is a "lack of a cognizable legal theory *or the absence of sufficient facts alleged under a cognizable legal theory*." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (emphasis added). Johnson also cannot wave away the fact that courts need not accept conclusory allegations or unwarranted inferences as true. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965-66 (2007) (noting that "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998) ("[C]onclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."). Nor can Johnson dispute that dismissal is proper if a defense appears on the face of the complaint, i.e., if the plaintiff pleads itself out of court. *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995). These are the governing principles that control this Motion.

Similarly, although Johnson insists that there is a "liberal policy regarding amendment," it concedes that denial of leave to amend is proper if amendment would be futile. Opposition at 3-5; *see also* Fed. R. Civ. P. 15(a); *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004) (leave to amend properly denied where amendment would be futile). In addition, a party's failure to indicate additional facts that could be alleged to save a claim counsels in favor of denying leave to amend. *Orion Tire Corp. v. Goodyear Tire & Rubber Co., Inc.*, 268 F.3d 1133, 1137 (9th Cir. 2001). Again, these are the controlling principles for this Motion, and Johnson does not dispute them.

**B. Johnson Fails to State a Claim for Breach of Contract Based on the Termination Because It Admits Both Breach and Failure to Cure.**

As discussed in the Motion, the License Agreement contains numerous provisions intended to carefully govern Johnson's use of Dux's intellectual property. Motion at 3-5, 10-11. Among these provisions are Sections 3.3 and 8.3, which unequivocally require the use of the trademark registration symbol ("®"), and require that Johnson obtain Dux's prior approval before issuing any advertisements. License Agreement §§ 3.3, 8.3. Johnson concededly failed to comply with these requirements before sending its postcard advertisement to an untold number of customers on its

mailing list. Johnson concedes in its Complaint that it failed to use the trademark registration symbol. Complaint ¶ 14. Johnson also concedes this point in its Opposition. Opposition at 5-6.

Johnson now goes a step further, and concedes that it has not attempted to cure this breach, let alone to cure it within the 30 days following the October 12, 2007 notice of the breach. Opposition at 6. Johnson also does not and cannot dispute the fact that the October 12, 2007 notice cited, as an independent basis for termination, Johnson's failure to obtain prior approval of the advertisement, a failure which is likewise incurable. Motion at 5 & n.6; Opposition at 5-6. These admitted facts entitled Dux to terminate the License Agreement under the plain terms of that contract. License Agreement § 15.2(a) (permitting termination where a party is "in default of *any* of its obligations hereunder and shall have failed to correct or cure such default within thirty (30) calendar days after having received written notice of such default" (emphasis added)). In response, Johnson makes four assertions: (1) that the termination issue cannot be decided on a motion to dismiss because it "goes to the merits of this case;" (2) that Johnson's breach of the License Agreement was immaterial and cannot support termination; (3) that the License Agreement requires an opportunity to cure and does not mention an "incurable" breach; and (4) that Dux itself has issued an advertisement that omitted the trademark registration symbol. Opposition at 5-6. None of these arguments has any merit.

**1.    The Termination Issue Can Be Decided on a Motion to Dismiss Because the Relevant Facts Are Undisputed.**

The termination issue most assuredly can be decided on a motion to dismiss because the pertinent facts are not disputed and the issue turns solely on a question of contract interpretation. Dux demonstrated in the Motion that the interpretation of a contract is a question of law, and that a court may interpret a contract in deciding a motion to dismiss. Motion at 10 (citing *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380, 1383 (9th Cir. 1986), and *Weinstein v. Saturn Corp.*, No. C-07-0348 MMC, 2007 WL 1342604, *1-*2 (N.D. Cal. May 8, 2007)). Johnson has cited no authority to contradict these cases. Instead, Johnson offers the bare assertion that the issue should not be decided on a motion to dismiss because it "goes to the merits of this case." Opposition at 5. Of course it does, but that is what Rule 12(b)(6) is all about. Where, as here, a

plaintiff cannot allege facts, as opposed to conclusions, showing even a colorable claim for relief, those issues should be decided promptly so the parties can avoid wasting resources on unnecessary and costly discovery.

**2. Johnson Has Not Established That Its Breach Was Immaterial.**

Johnson's argument that the breach was immaterial, and did not justify termination, is similarly unavailing. Johnson relies exclusively on *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*, 241 Cal. Rptr. 487, 495-96 (Cal. Ct. App. 1987), for the proposition that not every breach of a contract justifies termination. Opposition at 6. But while Johnson quotes extensively from *Superior Motels*, it omits the actual *holding* of that case, which was that the breach at issue there *was* material. *Superior Motels*, 241 Cal. Rptr. at 498. That holding actually supports this Motion.

*Superior Motels* involved an anti-assignment provision in a lease agreement stating that the appointment of a receiver to take possession of the lessee's assets would constitute a breach. *Id.* at 489.[2] The lease agreement also contained a provision requiring cure within 15 days of notice of default, and stated that if the lessee failed to cure, the lessor could reenter the premises following a specified notice period. *Id.* at 489-90. Subsequently, a receiver was appointed to take possession of the lessee's assets. *Id.* at 490. The lessor provided notice of the default, but the default was not cured. *Id.* at 490-91. After waiting for the additional notice period to run, the lessor attempted to regain possession and filed suit accordingly. *Id.* at 491. The trial court held that the breach of the anti-assignment provision was material. *Id.* at 492-93. The Court of Appeal affirmed, noting the importance of the anti-assignment provision and the interests of the lessor that it was intended to protect. *Id.* at 496-98.

So here, the detailed provisions of the License Agreement governing Johnson's use of Dux's intellectual property protect Dux's vital interests. This is, after all, a *License Agreement* which gives Johnson a carefully circumscribed right to use Dux's most valuable asset—a brand and a reputation for quality that have been built up over decades. As discussed more fully in the Motion, the License Agreement as a whole, and the provisions governing the use of Dux's

[2] The breach issues in the *Superior Motels* case involved additional parties besides the original lessor and lessee, but the distinction is unimportant for present purposes.

registered trademarks and requiring prior approval of advertisements in particular, are essential to protecting Dux's trademarks and good will, and to giving Dux the broadest possible remedies in the event of infringement. *See* Motion at 3-5, 10-11; License Agreement § 8.3 (imposing requirements concerning use of registered Dux trademarks and prior approval of advertisements "[i]n order to control the way in which the Trademarks, including the registered 'Duxiana' and 'Dux' trademarks, are used, and in order to ensure the uniformity and quality of advertising of Duxiana Products"); 15 U.S.C. § 1111 (requiring trademark registrant to give notice of registration with "®" symbol, or words "Registered in U.S. Patent and Trademark Office" or "Reg. U.S. Pat. & Tm. Off.",  in order to recover profits and damages, unless infringer had actual notice of registration).  These provisions constitute several pages of the License Agreement, and are remarkable for their breadth and detail.  License Agreement §§ 1.13, 2.1, 3.1-3.6, 8.3-8.5.  They state clearly, unequivocally, and repeatedly that the DUX and DUXIANA registered trademarks must be accompanied with the trademark registration ("®") symbol, and that Johnson must obtain Dux's approval before issuing any advertisements.  License Agreement §§ 3.2-3.3, 8.3-8.5.

Johnson's attempts to brush off an admitted and uncured breach of provisions that, on their face, go to the heart of the parties' agreement and are designed and essential to protect the valuable good will of the licensor's business must fail as a matter of law.

### 3. Johnson's Breach Was Incurable, and Johnson Concedes Making No Effort to Cure.

Johnson's argument that the License Agreement does not provide for termination based on an "incurable" breach also is without merit.  Opposition at 5.  As stated in the Motion, the incurable nature of Johnson's breach obviated the cure provision in the License Agreement.  Motion at 11; *see also* 15 Williston on Contracts (4th ed.) § 45:23 (discussing Uniform Commercial Code provision concerning breach of installment contracts and noting that "[t]he statutory requirement that the seller be afforded an opportunity to cure the defect in the installment is, of course, inapplicable where the defect is of such a nature that it is incapable of being cured").  Johnson has not even addressed—much less refuted—this argument.

At any rate, even if Johnson were entitled to a 30-day cure period, it was indisputably put on notice of its breach by Dux's October 12, 2007 letter, and now concedes that it has made no effort to cure that breach during the ensuing three months. Opposition at 6. Although Johnson attributes its failure to attempt to cure to Dux's insistence that the breach is incurable, that argument rings hollow: If Johnson really disagreed with Dux's position, it would have said so during the cure period and approached Dux with a proposed course of action. *See* 15 Williston on Contracts (4th ed.) § 45:23 (discussing Uniform Commercial Code provision concerning breach of installment contracts and noting that "it is incumbent upon the seller to assure the buyer that a cure will be forthcoming" and that the "right to cure is not designed to allow the seller to have a never-ending series of chances to bring the goods into conformity with the contract; nor is it designed to force the buyer to accept a nonconforming product as satisfaction of the contract"). Instead, Johnson did nothing, and even now does not allege anything in its Complaint or Opposition as to how a cure might be accomplished.[3] That is fatal to Johnson's argument.

**4. Johnson's Reliance on Another Advertisement Omitting the Trademark Registration Symbol Is a Red Herring.**

Johnson also asserts that Dux has mailed marketing materials without the trademark registration symbol, and attaches a copy of an advertisement to the Opposition. Opposition at 6 & Exhibit B. As an initial matter, this document is not referenced in the Complaint and therefore cannot be considered in deciding the Motion. *Schneider v. Cal. Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's ... memorandum in opposition to a defendant's motion to dismiss." (emphasis in original)). Additionally, the document has not been authenticated by an affidavit or declaration, so it is not properly before the Court. *See* Local Rule 7-5(a). In all events, the argument is a red herring.

The advertisement cited by Johnson was printed in 2005 by Quintess, which is a Dux marketing partner, not by Dux. Supplemental Declaration of Bo Gustafsson in Support of

---

[3] This admitted fact also refutes Johnson's assertion that the breach should be ignored because it was an "innocent mistake." Opposition at 6.

Defendant's Motion to Dismiss ¶ 2 (filed concurrently herewith). When the advertisement was received, reviewed and approved by Dux before it was printed by Quintess, Dux specifically instructed Quintess to include the "®" symbol. *Id.* Moreover, the Quintess advertisement was not a general mailing, but was restricted to a discrete group of persons who had already purchased Dux beds. *Id.* Johnson offers no authority to support its untenable assertion that an error made by a Dux marketing partner contrary to specific instructions somehow relieves Johnson of its obligations to comply with the plain terms of the License Agreement. Johnson also does not, because it cannot, allege that it somehow relied on—or even knew about—the Quintess advertisement when Johnson omitted the "®" symbol and failed to obtain approval of the advertisement at issue in this case. Dux's dealings with Quintess with respect to the Quintess advertisement have nothing to do with Johnson.

* * *

Johnson's admissions confirm that the termination of the License Agreement was proper, and cannot support Johnson's claim for breach of contract, or any other claim.

**C. Johnson's Opposition Confirms That the Other Assertions of Breach of Contract, and Unfair Competition, Must Be Dismissed as Impermissibly Vague and Conclusory.**

The Motion addresses Johnson's laundry list of other alleged breaches of contract and unfair competition, and demonstrates that those claims should be dismissed for being impermissibly vague and conclusory. Motion at 12-14. In response, Johnson asserts—in terms that are as conclusory as the Complaint itself—that these alleged breaches are sufficient to state a claim. Opposition at 7-9. In fact, Johnson generally just repeats or paraphrases the insufficient allegations of the Complaint (and sometimes does even less than that), and offers no indication of any additional relevant information pertaining to the challenged allegations. Opposition at 7-8.

For example, the Motion takes issue with paragraphs 20 and 33(c) of the Complaint, which allege that Dux failed to honor warranty and other reimbursement requirements. Motion at 12. Specifically, the Motion argues that paragraphs 20 and 33(c) are impermissibly vague in light of the parties' 16-year course of dealing and that, for all Dux knows, this purported breach was waived long ago or is time barred. Motion at 12. In its Opposition, Johnson merely restates the

conclusory assertions in these paragraphs of the Complaint, claims that Dux has not reimbursed Johnson for expenses submitted "in the past," and asserts that Johnson has had to pay a *de minimis* fee for warehousing "warranty replacements." Opposition at 7. This does nothing to clarify what warranty claims are at issue, what other reimbursements are at issue, or when any of this allegedly improper conduct took place.

Johnson's other assertions are similarly ineffective. The Motion challenges paragraph 33(d) of the Complaint, which states that Dux failed to advertise properly and required Johnson to waste money on "ineffectual" advertising. Motion at 12. Johnson's only response is the following: "This claim refers to Dux failing to provide effective advertising and continuing to place ineffective advertising in the fact [sic] of complaints regarding same." Opposition at 7. Johnson's Opposition says even less about this allegation than the Complaint, and does not respond to the points made in the Motion. Once again, there is nothing to inform Dux or the Court as to what Johnson is talking about or when it supposedly occurred.

The Motion challenges paragraphs 21 and 33(e) of the Complaint, which allege that Dux has offered prices, discounts and incentives to other distributors but not to Johnson. Motion at 12. In response, Johnson simply states, "This claim is self explanatory." Opposition at 7. But the claim is hardly self-explanatory because it does not identify the circumstances of these offers, when during the past 16 years they occurred, how this breached the License Agreement, or anything else that would allow Dux to frame a responsive pleading.

The Motion challenges paragraph 33(f) of the Complaint, which alleges that Dux has diverted Johnson's customer orders to itself and others. Motion at 12. The Opposition states, "This claim refers to Dux selling goods directly to a customer of plaintiffs in breach of the agreement." Opposition at 7-8. Again, this just reiterates what is in the Complaint and does nothing to respond to the Motion; we still are left to wonder—what goods, what customer, on what date, and what provision of the License Agreement supposedly is at issue?

Johnson's vague and conclusory assertions of breach of contract are subject to dismissal for the reasons stated and based on the authorities in the Motion.[4] *See* Fed. R. Civ. P. 8(a), 12(b)(6),

[4] To the extent Johnson adds additional information in the Opposition, it is nonetheless still

LAW OFFICES
Allen Matkins Leck Gamble Mallory & Natsis LLP

729702.01/SF

-8-

Case No. C07-05754 MMC
Defendants' Reply in Support of Motion to Dismiss Complaint

12(e); *Jones v. Cmty. Redevelopment Agency*, 733 F.2d 646, 649-50 (9th Cir. 1984); *Hewlett-Packard Co. v. Intergraph Corp.*, No. C 03-2517 MJJ, 2003 WL 23884794, at *1 (N.D. Cal. Sept. 6, 2003); *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). Moreover, the Opposition does not even pretend to address the fact that paragraph 33(c) of the Complaint, which asserts that Dux engaged in a "scheme to defraud plaintiffs," must be alleged with particularity. Motion at 12-13; Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp USA*, 317 F.3d 1097, 1103-04, 1105-06 (9th Cir. 2003); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000). Those claims must be dismissed for that reason as well.

Johnson's unfair competition allegations also must be dismissed as impermissibly conclusory. Motion at 13-14. Notably, Johnson says nothing in response to Dux's argument that paragraph 35 of the Complaint should be dismissed because the California Franchise Relations Act does not apply to these parties. Opposition at 8-9. Instead, Johnson relies only on paragraph 34, which asserts that Dux failed to provide Johnson with prices, discounts and incentives offered to other licensees, and that this constituted unfair competition and antitrust violations. Opposition at 8. Once again, however, Johnson offers no factual information to support this allegation, and merely goes on to discuss a limited number of legal authorities concerning price discrimination. Opposition at 8-9. But even assuming that Johnson has correctly stated the law of price discrimination, which Dux does not concede, each of the authorities it cites for the elements of such claims requires an allegation that the discrimination tended to destroy competition. Opposition at 8-9. Johnson has not alleged any facts whatsoever suggesting any injury to

---

insufficient to state a claim. For example, the Motion challenges paragraph 33(h) of the Complaint, which alleges that Dux has interfered with relations with Johnson's employees. Motion at 12. In response, Johnson states that this refers to Dux sending its termination notice by fax to Johnson's shop with knowledge that it would be seen by Johnson's employees, who would then have concern about the future of their employment. Opposition at 8. Even if this information were part of the Complaint, it would not support a breach of contract claim because Johnson does not identify any provision in the contract prohibiting Dux from sending faxes to Johnson's shop, or requiring Dux to send communications to some other location. In fact, the License Agreement expressly *permits* communications by fax. License Agreement ¶ 17. The Motion also challenges paragraphs 19 and 33(b) of the Complaint, which allege that Dux manufactured defective merchandise. Motion at 12. Johnson responds that this refers to bedding materials that were subject to a recall having to do with flammability. Opposition at 7. Yet this does not suggest a breach of the contract, because any products that were recalled and replaced would have been cured under the License Agreement, and would not support a claim for breach.

competition.[5] Johnson's unfair competition and antitrust allegations are conclusory in the extreme and must be dismissed.

**D. Johnson Concedes That Dismissal of Its Conversion Claim Is Proper.**

Johnson concedes that dismissal of its conversion claim is proper. Opposition at 13. Accordingly, the conversion claim must be dismissed.

**E. Johnson Does Not State a Claim for Intentional Infliction of Emotional Distress Because It Fails to Allege Facts Showing Extreme and Outrageous Conduct.**

As stated more fully in the Motion, a claim for intentional infliction of emotional distress requires, among other things, a showing of extreme and outrageous conduct by the defendant. Motion at 15-16 (citing *Cochran v. Cochran*, 76 Cal. Rptr. 2d 540, 543 (Cal. Ct. App. 1998)). The Motion also shows that California imposes a demanding standard for showing that conduct is sufficiently extreme and outrageous to be actionable. Motion at 15. The Motion goes on to discuss cases concerning threats that have been found to be non-actionable which are far more outrageous than anything found in the Complaint. Motion at 15-16 (citing *Cochran*, 76 Cal. Rptr. 2d at 546-47 (death threat not actionable, even combined with other threats), and *Schneider v. TRW, Inc.*, 938 F.2d 986, 992-93 (9th Cir. 1991) ("*Schneider*") (conduct of supervisor who had screamed, yelled and made threatening gestures while criticizing plaintiff's job performance not actionable)).

In response, Johnson attempts to cobble together an argument based on dated, inapposite case law involving employment relationships and the incorrect notion that Ms. Johnson's relationship with Dux is "akin" to an employment relationship. Neither assertion has merit. Ms. Johnson does not claim to be, is not, and never has been a Dux employee. Nor is Johnson, or Ms. Johnson as an individual, a franchisee. *See* Motion at 13-14 (explaining why California Franchise Relations Act does not apply to Dux and Johnson). These facts, which are undisputed, foreclose Johnson's attempt to save the emotional distress claim. Indeed, the case that Johnson quotes

---

[5] Additionally, as noted in the Motion, to the extent that Johnson alleges on information and belief that different prices were offered to different distributors and that this violated the common law and various statutes (potentially including fraud) (Complaint ¶ 21), Johnson needed to allege the basis for such information and belief. Motion at 13 n.8 (citing *Weinstein*, No. C-07-0348 MMC, 2007 WL 1342604, *1 n.1).

concerning franchise agreements is not an emotional distress case at all, but instead is an arbitration case that compares franchise agreements to employment agreements in the course of discussing adhesion contracts. *Independent Ass'n of Mailbox Center Owners, Inc. v. Superior Court*, 34 Cal. Rptr. 3d 659, 408-10 (Cal. Ct. App. 2005). It has nothing to do with emotional distress.

Johnson's citation of case law concerning employment relationships is similarly misplaced. *See* Opposition at 11-12 (citing *Alcorn v. Anbro Eng'g, Inc.*, 86 Cal. Rptr. 88 (Cal. 1970), and *Wallis v. Superior Court*, 207 Cal. Rptr. 123 (Cal. Ct. App. 1984)). As noted above, Ms. Johnson is not a Dux employee. As Johnson concedes (Opposition at 11), these cases rely heavily on the plaintiff's status as an employee, which involves a relationship that generally is at-will and involves a high degree of vulnerability, as opposed to a negotiated License Agreement between two business entities. These cases are readily distinguishable from this one.

*Alcorn*, for example, involved an employee who was subjected to horribly abusive racial slurs in the course of being wrongfully terminated. *Alcorn*, 86 Cal. Rptr. 88 at 89. The "aggravated circumstances" involving this language factored heavily into the court's holding. *Id.* at 90-91 & n.4-5. Johnson alleges nothing of the sort here.

*Wallis*, which has since been overruled on other grounds, *Foley v. Interactive Data Corp.*, 254 Cal. Rptr. 211 (1988), involved an employee who, as known by the defendant, was in an "extremely vulnerable position" given the facts that he had worked at the defendant's furniture plant for over 30 years; he was told he would be laid off prior to becoming eligible for pension benefits; he entered into an agreement for a monthly stipend for ten years in exchange for not competing with the defendant's business and refrained from taking on new employment; he had no other work skills; and the defendant made a misrepresentation to the plaintiff in the course of terminating the stipend without warning after only three years. *Wallis*, 207 Cal. Rptr. at 125, 127, 129-30. Again, Johnson has alleged nothing similar in this case. The Opposition (not the Complaint) states only that Ms. Johnson is 62 years old and that the business "contributes to Ms. Johnson's livelihood." Opposition at 10, 12. Johnson does not allege that Ms. Johnson is destitute, has no transferable work skills, or has no other means of support—or that Dux knew any

of those things. In fact, Ms. Johnson is a sophisticated party who runs her own business. *Wallis* is not on point. *See Romaneck v. Deutsche Asset Mgmt.*, No. C05-2473 TEH, 2005 WL 2171987, *5 (N.D. Cal. Sept. 6, 2005) (distinguishing *Wallis* based on plaintiff's vulnerability and employer's knowledge of that vulnerability).

Even setting aside the fact that Ms. Johnson is an independent business owner, not a Dux employee, the emotional distress claim would still fail. Although an employment relationship can be a *factor* in showing that a plaintiff is particularly vulnerable to the defendant's conduct, "major outrage is still essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough." *Cochran*, 76 Cal. Rptr. 2d at 544-45 (internal quotation marks and citations omitted). Indeed, as noted in the Motion, the *Schneider* case, in which the court affirmed summary judgment for the defendant, involved threats made during an employment relationship. *Schneider*, 938 F.2d at 992-93.

In short, Johnson's conclusory allegations that Dux "threatened" and "harassed" Ms. Johnson on a number of occasions, and that this was extreme and outrageous, fail to state a claim. Motion at 15-16; *Twombly*, 127 S. Ct. at 1965-66 (noting that "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Pareto*, 139 F.3d at 699; *Cochran*, 76 Cal. Rptr. at 543, 545-47; *Schneider*, 938 F.2d at 992-93. The claim must be dismissed.

**F. Johnson Concedes That Dismissal of Its Unjust Enrichment Claim Is Proper.**

Johnson concedes that dismissal of its unjust enrichment claim is proper. Opposition at 13. Accordingly, the unjust enrichment claim must be dismissed.

**G. Johnson Does Not State a Claim Under Cal. Bus. & Prof. Code § 17200 Because It Has Identified No Improper Conduct on the Part of Dux.**

As stated in the Motion, Johnson's Section 17200 claim fails because it is premised on Dux's termination of the License Agreement. Motion at 17. In support of the Section 17200 claim, the Complaint alleges only that the "scheme to terminate the instant franchise and *defraud* Plaintiffs out of their valuable property and convert it to their own accounts or those of their associates" violates Section 17200. Complaint ¶ 50 (emphasis added). In its Opposition, Johnson

now asserts that this claim also relies on the allegation in paragraph 15 of the Complaint, which asserts that Dux has engaged in a "similar pattern across the country in recent years of terminating Dux distributor/franchisees and converting their business for their own accounts." Complaint ¶ 15. But again, because the termination of the License Agreement was not improper, it cannot support the Section 17200 claim. Moreover, paragraph 50 of the Complaint relies on an allegation of fraud. As a result, Johnson was required to plead with particularity, which it has not done.

Even if the supposed so-called "scheme" of terminating licensee agreements alleged by Johnson were true, moreover, it still would not give rise to liability under Section 17200. Section 17200 requires a determination that the practice at issue "offends an established public policy or ... is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Cel-Tech Comm., Inc. v. Los Angeles Cellular Tel. Co.*, 83 Cal. Rptr. 2d 548, 564 (Cal. 1999) (internal quotation marks and citations omitted). A mere breach of contract, without more, does not meet this standard.

The cases that Johnson cites are not to the contrary. Opposition at 12-13. *Orkin Exterminating Co. v. FTC*, 849 F.2d 1354 (11th Cir. 1988), which is not binding in any event, involved an affirmance of the FTC's determination that Orkin violated section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, where Orkin's breach of over 200,000 consumer contracts for pest extermination services resulted in an "extraordinary level of consumer injury." *Orkin*, 849 F.2d at 1367-68.[6] Johnson's other case, *Allied Grape Growers v. Bronco Wine Co.*, 249 Cal. Rptr. 872 (Cal. Ct. App. 1988), involved a bulk purchaser of grapes who had a practice of systematically assigning an artificially low quality grade to the grapes it purchased from the plaintiff. *Id.* at 874-75. The trial court held that this practice was unfair under Section 17200 because it was fraudulent and violated sections of the California Food and Agricultural Code. *Id.* at 883. The Court of Appeal affirmed and held that, even assuming the practice was not fraudulent, it was nonetheless "unfair" as an "unconscionable" effort by a purchaser that had

[6] The passage that Johnson attributes to the court in *Orkin* (Opposition at 12-13) is actually not the court's statement, but rather is a section from a law review article that is merely "noted" by the court. *Orkin*, 849 F.2d at 1367.

"overcontracted for the purchase of grapes in a year that was marked by a glut of grapes on the market." *Id.* at 884.

Johnson alleges no breach on the scale at issue in *Orkin* or systematic unconsionability of the sort at issue in *Allied*. This claim must be dismissed as well.

**H. Johnson Concedes That It Is Not Currently Seeking a Preliminary Injunction, and Johnson Cannot Meet the Standards for an Injunction in Any Event.**

Johnson concedes that it has not yet moved for injunctive relief. Opposition at 9. Thus, there is presently no request for a preliminary injunction before the Court. If Johnson subsequently moves for a preliminary injunction, Dux will respond at the appropriate time. At any rate, Johnson will not be entitled to an injunction because each of its substantive claims for relief must be dismissed and for the additional reasons stated in the Motion. Motion at 18.

## III. CONCLUSION

Dux's motion to dismiss should be granted. The claims for conversion and unjust enrichment should be dismissed without leave to amend given Johnson's concession that dismissal of such claims is appropriate. The remaining claims should also be dismissed without leave to amend because amendment would be futile, and Johnson, as the Opposition makes plain, does not so much as suggest that it has additional facts that might save its claims.

Dated: January 4, 2008

Respectfully submitted

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP
STEPHEN S. WALTERS
MARK J. SEIFERT

By: /s/
STEPHEN S. WALTERS
Attorneys for Defendants
DUX INTERIORS, INC. and
BO GUSTAFSSON

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

729702.01/SF

-14-

Case No. C07-05754 MMC
Defendants' Reply in Support of Motion to Dismiss Complaint